Jose Maria LOERA and Elbar
Investments, Inc.,
Appellants,

v.

INTERSTATE INVESTMENT
CORPORATION,
Appellee.

No. 14–00–01342–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 25, 2002.

Rehearing Overruled Sept. 19, 2002.

Vincent Rodriguez, Houston, for Appellants.

John C. Knobelsdorf, II, Panka J. R. Parmar, Richard Petronella, Houston, for Appellee.

Panel consists of Chief Justice BRISTER and Justices FOWLER and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

This appeal concerns ownership of excess proceeds from a tax foreclosure sale. We affirm.

### I. BACKGROUND

Appellant Jose Maria Loera was delinquent in paying ad valorem taxes on residential real estate he owned in Houston, Texas. After the trial court entered judgment against Loera and in favor of the taxing units, Loera's property was sold at a tax foreclosure sale. The excess proceeds from the sale amounted to approximately $23,000. Within days after the tax sale, appellee Interstate Investment Corporation ("Interstate") advised Loera that he might be entitled to receive money from the court registry. Appellee's principal, Nanik Bhagia, offered to "help" Loera obtain the money. Specifically, Bhagia offered Loera $1,000 in exchange for his signature on an assignment and quitclaim deed of all Loera's rights in the property. Bhagia also promised Loera an additional $6,000 if Bhagia were able to obtain the excess proceeds from the Court registry. Bhagia did not indicate to Loera how much money would likely be deposited into the court registry. Loera believed the property was worth less than the taxes owed and accepted Bhagia's offer. In 1999, Loera signed (1) a receipt for the $1,000 he received from Interstate and (2) a deed and assignment for the excess proceeds to go to Interstate.

Sometime after the transaction with Interstate, the president and principal of appellant Elbar Investments, Inc., Eli Klaimy, offered to help Loera recover funds in the court registry. On August 17, 1999, Loera signed an assignment of the excess proceeds to Elbar.[1]

In August of 1999, both Interstate and Elbar filed motions with the trial court seeking distribution of the excess proceeds. A tax master heard the motions and issued a report finding that (1) both Bhagia and Klaimy had engaged in the unauthorized practice of law and (2) their agreements with Loera were illegal, against public policy, and unenforceable as a matter of law. He recommended that

---

1. The document provides that Loera assigned "all of his right, title, interest and claim in the deposit and/or excess proceeds in the above entitled and numbered cause" to Elbar. In the same document, Loera stated that he had not conveyed to any third party or otherwise divested himself of his right to the excess proceeds or deposit except "one or more papers" he signed for Bhagia or Interstate. Loera also stated neither Interstate nor Bhagia (1) gave him a copy of any papers he signed for Interstate or (2) fully disclosed the amount of the excess proceeds or the tax foreclosure process. In an agreement signed by Klaimy and Loera, they opine that any papers Loera signed for Interstate are void, and Loera stated his willingness to return the $1,000 to Interstate in exchange for cancellation of the papers he signed. The agreement also recites that Elbar paid Loera $2,000 for a deed to the property, the assignment and the agreement.

payment be made to the taxing units for any taxes and related penalties and interest due or delinquent from the judgment in the underlying case and recommended that $1,000 be paid to Interstate, $2,000 to Elbar, and any remaining amount to Loera.

Both Elbar and Interstate appealed the Tax Master's Report to the state district court. The trial court found that Loera did not file an appeal from the Tax Master's Report, file a motion requesting that the excess proceeds be distributed to him, or file any pleading with the trial court seeking to set aside either assignment. The court further found that Loera did not claim fraud in the inducement, unconscionability or violations of the Texas Deceptive Trade Practices Consumer Protection Act ("DTPA"), and did not claim that either Interstate or Elbar engaged in the unauthorized practice of law. Finally, the court ordered that the taxing units first recover from the court's registry taxes due, along with penalties, interest, attorney's fees and costs, under an agreed order the court had already signed. The court next ordered that Interstate recover $20,577.06 from the court's registry and that, within thirty days of receiving this disbursement, Interstate pay Loera $6,000.

Loera now raises two points of error and a supplemental issue in this appeal. We address appellants' supplemental issue first.

## II. INVALIDITY OF LOERA'S ASSIGNMENT TO INTERSTATE

Appellants argue that Loera's assignment to Interstate is invalid because (A) an amendment to Texas Tax Code section 34.04 renders Loera's pre-amendment assignment to Interstate void and (B) Interstate violated the DTPA and breached its

fiduciary duty—arising out of a principal—agent relationship—to Loera.

## A. VOIDABILITY—STATUTORY AMENDMENT

Texas Tax Code section 34.04 governs claims to excess proceeds from a tax sale. *See* TEX. TAX CODE ANN. § 34.04 (Vernon 2001). While this case was pending on appeal[2] and effective September 1, 2001, the Texas Legislature amended section 34.04 to add subsections (f), (g), and (I). These subsections specifically address assignment of a property owner's claim to excess proceeds and the fee a person may charge an owner to obtain excess proceeds:

(f) A person may not take an assignment of an owner's claim to excess proceeds unless:

(1) the assignment is taken on or after the 36th day after the date the excess proceeds are deposited in the registry of the court;

(2) the assignment is in writing and signed by the assignor; and

(3) the assignment document contains a sworn statement by the assignor affirming:

(A) that the assignment was given voluntarily;

(B) the date on which the assignment was made and that the date was not earlier than the 36th day after the date the excess proceeds were deposited in the registry of the court;

(C) that the assignor has received the notice from the clerk required by Section 34.03;

(D) the nature and amount of consideration given for the assignment;

---

**2.** Final judgment was signed and notice of appeal filed in 2000.

(E) the circumstances under which the excess proceeds are in the registry of the court;

(F) the amount of the claim to excess proceeds in the registry of the court;

(G) that the assignor has made no other assignments of the assignor's claim to the excess proceeds; and

(H) that the assignor knows that the assignor may retain counsel.

(g) An assignee who obtains excess proceeds without complying with Subsection (f) is liable to the assignor for the amount of excess proceeds obtained plus attorney's fees and expenses.

. . . .

(I) A fee charged to obtain excess proceeds for an owner may not be greater than 25 percent of the amount obtained or $1,000, whichever is less.

TEX. TAX CODE ANN. § 34.04(f), (g), and (I).

Appellants do not complain that Loera's assignment violates the unamended statute; their complaint below (discussed infra) was that the assignment to Interstate is voidable for reasons other than noncompliance with the unamended statute. In their supplemental issue, appellants contend Loera's pre-amendment assignment violates the *amended* 34.04(f) requirements and is rendered void as a matter of law. *See id.* § 34.04(g) (as amended) ("An assignee who obtains excess proceeds without complying with Subsection (f) is liable to the assignor for the amount of excess proceeds obtained plus attorney's fees and expenses."). Assuming the pre-amendment assignment was governed by *amended* section

34.04(f), Interstate would be liable to Loera "for the amount of excess proceeds obtained plus attorney's fees and expenses." *See id.*

Appellants argue that the Texas Legislature has *specifically* provided for the applicability of the amended section 34.04 to this post-judgment case pending on appeal by virtue of its enabling language—instructing that section 34.04, "as amended by this Act, appl[ies] to the disposition of excess proceeds from a property tax foreclosure or a summary sale of seized property, *regardless of the date on which the judgment was rendered, the tax sale was conducted, or the deposit of proceeds with the court was made*" (emphasis added). TEX. TAX CODE ANN. § 34.04 historical note (Vernon 2001) [Act of June 17, 2001, 77th Leg., R.S., ch. 1430, § 44, 2001 Tex. Gen. Laws 5109, 5122].

■ While we agree with appellants' assertion that we must apply the amended law as intended, we do not interpret the amendment's enabling language to apply when an order to disburse the proceeds has already been issued under pre-amendment section 34.04, as in this case. Whether the amendment applies to cases in which there has already been an order releasing the excess proceeds appears to be one of first impression.[3]

The enabling language restricts application of the amendment to cases in which a disposition of the excess proceeds is yet to occur: "Section[] ... 34.04, Tax Code, as amended by this Act, appl[ies] to the *disposition* of excess proceeds from a property tax foreclosure....". TEX. TAX CODE ANN. § 34.04 historical note. However, in this case, the disposition of excess proceeds had already occurred insofar as the

**3.** Our research indicates that this is the first published case to interpret the reach of the 34.04 amendment.

trial court had already issued an order disbursing funds held in its registry. *See* TEX. TAX CODE ANN. § 34.03 (Vernon 2001) (governing the disposition of excess proceeds).

Accordingly, we hold that amended section 34.04 does not apply to this case and that Loera's pre-amendment assignment of rights to Interstate has not been rendered void by the Legislature's post-judgment amendment to section 34.04.

We overrule appellants' supplemental point of error.

## B. VOIDABILITY—DTPA AND FIDUCIARY DUTIES

■ Appellants assert in their second point of error that Loera's assignment to Interstate is voidable, based on a violation of the DTPA and a breach of fiduciary duty arising out of a principal-agent relationship between Loera and Interstate. Although appellants' motion for new trial mentions the DTPA and fiduciary duty, none of appellants' pleadings or argument to the trial court refers to these causes of action. Loera and Elbar rely on their Second Amended Motion to Pay Excess Proceeds and Cancel Assignment to Interstate Investment Corporation ("Second Amended Motion") as evidence that these grounds had been raised in the pleadings before the trial court. In the Second Amended Motion, appellants alleged that Interstate did not:

- provide Loera a copy of the documents he and Interstate signed,

- fully disclose "the entire foreclosure process," or

- disclose the amount of the excess proceeds.

To recover under the DTPA, a plaintiff must establish that (1) he was a consumer of the defendant's goods or services; (2) the defendant committed false, misleading, or deceptive acts in connection with the lease or sale of goods or services; and (3) such acts were a producing cause of actual damages to the plaintiff. *See* TEX. BUS. & COMMERCE CODE ANN. § 17.50(a) (Vernon Supp.2002); *Metro. Life Ins. Co. v. Haney*, 987 S.W.2d 236, 242 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (citing *Brown v. Bank of Galveston, N.A.*, 963 S.W.2d 511, 513 (Tex.1998)). To establish a breach of fiduciary duty, appellants must prove that such a fiduciary duty existed.

■ Even if Loera and Elbar established that Interstate failed to make such disclosures, there was no allegation or proof of the remaining elements for these causes of action. The parties never raised issues (before judgment was rendered) about whether Loera was a consumer or whether a principal-agent relationship had been established. The DTPA and breach of fiduciary duty theories were never pleaded, were not issues in trial, nor were they the subject of a request for a finding of fact or conclusion of law. Appellants cannot rewrite their pleadings to allege new causes of action for the first time in a motion for new trial. "It is well-settled that an appellate court should not decide a case on a theory different from that on which it was pleaded and tried." *Wiley-Reiter Corp. v. Groce*, 693 S.W.2d 701, 704 (Tex.App.-Houston [14th Dist.] 1985, no writ).

Because these complaints came too late, Loera and Elbar failed to preserve any error. *See* TEX.R.APP.P. 33.1(a); *see also El Paso Envtl. Sys., Inc. v. Filtronics, Inc.*, 609 S.W.2d 810, 813 (Tex.Civ.App.-El Paso 1980, writ refused n.r.e.), *disapproved on other grounds, Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters.*, 625 S.W.2d 295, 300 (Tex.1981) (finding usury issue raised for first time in motion for new trial was too late).

We overrule appellants' second point of error.

## III. ERRONEOUS FINDINGS OF FACT AND CONCLUSIONS OF LAW

Finally, in their first point of error, appellants contend the trial court erred in finding that Loera (1) did not file any motion to request the excess proceeds or file any pleading to set aside the assignment to Interstate and (2) did not appeal from the Tax Master's Report.

Loera argues, and we agree, there is no evidence to support the first finding because in a Second Amended Motion to pay Excess Proceeds and to Cancel Assignment to Interstate Investment Corporation—brought by both Loera and Elbar—Loera pled that his assignment to Interstate should be cancelled because the papers he signed were void due to Interstate's failure to give Loera a copy of the papers he signed and Interstate's failure to disclose the "entire foreclosure process and excess proceeds." Therefore, we find the trial court erred in making this finding.

An incorrect finding of fact or conclusion of law does not warrant a reversal if the judgment is otherwise correct. *Goebel v. Brandley*, 76 S.W.3d 652, 657 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Reversal is proper only if a different verdict would have occurred but for the error. *Vaughn v. DAP Fin. Servs., Inc.*, 982 S.W.2d 1, 6 (Tex.App.-Houston [1st Dist.] 1997, no pet.).

Whether the trial court correctly found that Loera filed a pleading (1) to request the excess proceeds or (2) to set aside the assignments to Interstate is not determinative of whether Interstate had a right to the excess proceeds; therefore, we may not reverse because a different verdict would not have resulted from correction of the court's finding.

Moreover, Loera acknowledges in his appellate brief that he did not file an appeal to the referring court from the Tax Master's Report. The trial court's finding in that regard, therefore, is correct. However, Loera maintains that the trial court erred because he was not required to appeal from the Tax Master's Report having prevailed before the Tax Master: "It was error for the district court to find or conclude that Loera could not obtain relief in the district court on appeal because Loera did not file a Notice of Appeal as the prevailing party in the Tax Master's Report." For this assertion, Loera cites us to a specific page of the trial court's findings of fact. We did not find that the trial court, in fact, found or concluded that Loera could not obtain relief in the district court on appeal.[4] Accordingly, we find that this assertion lacks merit.

We overrule appellants' first point of error.

We affirm the judgment of the trial court.

---

4. Furthermore, we note that appellants' failure to appeal the Tax Master's Report to the referring court did not deprive them of the right to appeal or request relief from our appellate court and similarly will not affect the right to appeal or request relief from the Texas Supreme Court. *See* TEX. TAX CODE ANN. § 33.74(I) (Vernon 2002) ("The failure to appeal to the referring court, by waiver or otherwise, a master's report that is approved by the referring court does not deprive any party of the right to appeal to or request other relief from a court of appeals or the supreme court.").