109 S.W.3d 762 (2003)
EIKON KING STREET MANAGER, L.L.C. and Eikon King Street Investments, L.L.C., Appellants,
v.
LSF KING STREET MANAGER, L.L.C. Lone Star Fund II (U.S.), L.P., LSF International, L.P., and Hudco Partners, II, L.P., Appellees.
No. 05-02-00565-CV.
Court of Appeals of Texas, Dallas.
May 28, 2003.
Rehearing Overruled July 10, 2003.
*764 Steven K. DeWolf, Bellinger & DeWolf, L.L.P., Francis B. Majorie, Majorie Firm, Dallas, for Appellants.
George M. Kryder, III, Vinson & Elkins, Dallas, for Appellees.
Before Justices WRIGHT, FITZGERALD, and LANG.

OPINION
Opinion by Justice FITZGERALD.
This case involves the workings of a buy-sell provision in the Limited Liability Company Agreement (the "Agreement") between appellants Eikon King Manager, L.L.C. and Eikon King Street Investments, L.L.C. (together, "Eikon") on the one hand, and appellees LSF King Street Manager, L.L.C., Lone Star Fund II (U.S.), L.P., LSF International, L.P., and HudCo Partners, II, L.P. (collectively, "Lone Star") on the other. Following cross motions for summary judgment, Lone Star recovered both disputed funds in the registry of the trial court and attorney's fees. Eikon challenges the trial court's judgment in six points on appeal. For the reasons that follow, we reverse the trial court's judgment concerning attorney's fees for Lone Star, but we affirm the judgment in all other respects.

BACKGROUND
Eikon and Lone Star were members in a limited liability company formed to develop a large condominium project in California. Eikon invested approximately $3 million plus "the business opportunity" in the project; Lone Star invested approximately $44 million.

The Buy-Sell Provision
The parties' Agreement included a buy-sell provision, which forms the substantive basis of this lawsuit. According to its terms, one member (the "Invoking Member") initiated the procedure by delivering written notice to the other member (the "Offeree Member"). That notice set forth an amount (the "Stated Amount") which represented the price at which the Invoking Member would be willing to purchase all of the properties and other assets owned by the company, as if the Invoking Member were a hypothetical third party proposing to purchase the assets of the company. The Agreement then set forth a formula whereby the Stated Amount was used to calculate the value of each member's interest in the company following such a hypothetical sale.[1] The notice constituted a two-fold offer. By serving the notice, the Invoking Member was offering both (a) to purchase the interest of the Offeree Member for a price equal to the value of the Offeree Member's share, and (b) to sell its own (i.e., the Invoking Member's) *765 interest to the Offeree Member for a price equal to the value of the Invoking Member's own share. The Offeree Member was thus put to an election: it could choose to sell its own interest to the Invoking Member or to purchase the Invoking Member's interest. The Offeree Member was required to give notice of its election within thirty days, or it would be deemed to have elected to sell its interest to the Invoking Member. Whichever member was going to purchase the interest of the other member was then required to deliver a cash deposit in the amount of ten percent of the Stated Amount to the selling member. At the closing, the purchasing member was required to pay the entire purchase price for the seller's interest in "cash or other immediately available funds." The seller was required to execute documents necessary for the sale; if the seller refused to do so, the purchaser was granted a power of attorney to execute the documents on the seller's behalf.

Eikon's Invocation of the Buy-Sell Provision
Eikon attempted to invoke the buy-sell provision by delivering a notice to Lone Star. That notice identified a Stated Amount of $145,432,132.00. In the notice, Eikon offered to purchase Lone Star's interest for $9,500,000.00 or to sell its own interest to Lone Star for $4,071,429.00. Lone Star accepted the Stated Amount proffered by Eikon. But Lone Star believed Eikon had miscalculated the amount of its final offer and that the correct price for Eikon's sharebased upon the agreed Stated Amountshould have been $2,015,112.00. Nevertheless, with that explanation, Lone Star agreed to buy Eikon's interest. Rather than provide the required ten percent cash deposit to Eikon, Lone Star placed in escrow a cashier's check for $2,015,112.00 and a letter of credit for the remainder of the ten percent. At the closing, Lone Star tendered a cashier's check for $4,071,429.00, the full amount claimed by Eikon for its interest. However, Lone Star expressly reserved its right to the contested portion of that payment. Eikon accepted the full payment from Lone Star but refused to execute the closing documents. Lone Star exercised the power of attorney granted by the Agreement and signed the documents on Eikon's behalf.

The Litigation
Eikon brought this suit before the closing took place, alleging initially that Lone Star had breached the Agreement by failing to deliver the cash deposit required by the buy-sell provision. Eikon sought liquidated damages and attorney's fees. Lone Star answered and counterclaimed, seeking a declaratory judgment that required Eikon to sell its interest pursuant to the Agreement.[2] Eikon generally denied the allegations of the counterclaim.
As discussed above, the closing went forward despite Eikon's initiation of legal proceedings. After the closing, Eikon tendered the $ 4,071,429.00 check it had received from Lone Star into the registry of the trial court. Later, Eikon obtained permission from the trial court and withdrew $2,015,112.00, the uncontested amount which it was due. Thus, $2,056,317.00 remained in the registry of the court pending the outcome of the litigation.
In December 2001, Lone Star filed its motion for summary judgment. The following month, Eikon filed its Third Amended Petition. That petition included claims *766 against Lone Star based on breach of contract, conversion, fraud and fraudulent inducement, promissory estoppel, and declaratory judgment. Eikon sought actual damages, liquidated damages, exemplary damages, attorney's fees, and declaratory relief in the form of a vindication of Eikon's rights under the Agreement. Eikon also filed an amended answer to Lone Star's counterclaim, raising the affirmative defenses of waiver, ambiguity, and failure to perform conditions precedent.
Lone Star sought summary judgment in its favor on all claims asserted by Eikon. The motion contained ten grounds.[3] Eikon filed a response to Lone Star's motion and filed its own partial motion for summary judgment as well.[4] Eventually, Eikon's motion was denied; Lone Star's motion was granted. The trial court's order did not specify reasons for the ruling.
Eikon initially filed its notice of appeal, but this Court abated the appeal and remanded the case to the trial court for resolution of the issue of attorney's fees. On remand, the trial court awarded Lone Star fees in the amount of $454,476.50 for services through the time final judgment was entered, and up to $85,000.00 for attorney's fees in the event of appeal. Eikon filed an amended notice of appeal, and this proceeding was resumed.

APPELLATE REVIEW
When both sides move for summary judgment and the trial court grants one motion and denies the other, we review both sides' summary judgment evidence on appeal and determine all questions presented. Comm'rs Court of Titus County v. Agan, 940 S.W.2d 77, 81 (Tex.1997); Jones v. Strauss, 745 S.W.2d 898, 900 (Tex.1988). Our charge is to render such judgment as the trial court should have rendered. Agan, 940 S.W.2d at 81.
The Agreement states that it is to be "construed in accordance with and governed by the laws of the State of Delaware." However, our resolution of this appeal does not turn on any legal principle for which the laws of Texas and Delaware differ. Accordingly, we cite to Texas law herein. See, e.g., Young Refining Corp. v. Pennzoil Co., 46 S.W.3d 380, 385 (Tex. App.-Houston [1st Dist.] 2001, pet. denied) (applying Texas law where no conflict found between Texas and Mississippi law on relevant issues).

*767 COMPLIANCE WITH THE BUY SELL PROCEDURE
Eikon's first point charges that the trial court erroneously granted summary judgment on its breach of contract claim because Lone Star failed to comply with the buy-sell procedures dictated by the Agreement. Specifically, Eikon argues Lone Star failed to (1) make a "mirror-image" acceptance of the offer made by Eikon, (2) provide the required ten percent cash deposit to Eikon, and (3) pay the purchase price at closing in cash or other "immediately available" funds.[5] Accordingly, Eikon argues it is entitled to recover the $ 2,056,317.00 that was tendered conditionally at the closing and that remained in the court's registry. Interpretation of the Agreement is a question of law for this Court. See DeWitt County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex.1999); Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).

Adequacy of the Acceptance
Eikon argues at the outset that Lone Star was required to issue a "mirror-image" acceptance of the offer Eikon made in its notice. However, the Agreement does not employ "mirror-image" language. Instead, the Agreement requires the Offeree Member to elect to purchase the Invoking Member's interest "at the price at which the Invoking Member shall be deemed to have offered to sell such interest," or to sell its own interest "at the price at which the Invoking Member shall be deemed to have offered to purchase such interest." The key factor in determining the Invoking Member's offer is the Stated Amount. The value of any member's individual interest is based on a prescribed calculation from that number. Lone Star accepted the Stated Amount proposed by Eikon, but it challenged the methodology and accuracy of Eikon's calculations.[6]
The gravamen of Eikon's complaint under this issue is that Lone Star was not free to challenge Eikon's methodology or calculations. If faced with a defective notice, Lone Star could have ignored the notice or issued a notice of its own. However, Eikon argues, Lone Star could not correct errors in Eikon's notice and then treat the corrected notice as binding on the parties. We find at least three bases for rejection of this argument. First, our review of Eikon's live pleading and its response to Lone Star's motion for summary judgment establishes this "mirror image" argument was not raised below. Although Eikon urged a different purchase price from Lone Star, it did not urge that Lone Star's acceptance amounted to a breach of the Agreement. Except to attack the legal sufficiency of the movant's grounds for summary judgment, the nonmovant must expressly present to the trial court in a written answer or response any reason for avoiding the movant's entitlement *768 to summary judgment. Tex.R. Civ. P. 166a(c); McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 343 (Tex.1993). Any issue not expressly presented to the trial court in a written motion or response may not be raised as grounds for reversal on appeal. In re A.L.H.C., 49 S.W.3d 911, 915 (Tex.App.-Dallas 2001, pet. denied).
Second, Eikon does not quarrel with Lone Star's challenges to its calculations. In its summary judgment response, Eikon argued only that the language of the buy-sell provision was "confusing and convoluted," but that it had nonetheless acted reasonably in creating its notice.[7] On appeal, Eikon does not challenge the basis of Lone Star's calculations in any meaningful fashion.[8]
Finally, what Eikon does argue on appeal is that Lone Star ratified the "defective notice" by choosing to respond to it. We disagree with this argument as well. Ratification requires a person to adopt or confirm a prior act that did not then legally bind that person and which that person had the right to repudiate; the person must adopt or confirm with knowledge of all material facts. Avary v. Bank of America, N.A., 72 S.W.3d 779, (Tex. App.-Dallas 2002, pet. denied). Like waiver, ratification is largely a matter of intent. Id. Lone Star's intent is clear from the record: its acceptance was specifically limited to acceptance of the Stated Amount, not of Eikon's related calculations. Indeed, those calculations were challenged immediately by Lone Star in its original acceptance letter. Lone Star did not ratify the calculations in Eikon's notice.
We reject this first argument under Eikon's first point.

Delivery of the Cash Deposit
Eikon's second complaint concerning Lone Star's performance under the buy-sell provision relates to the requirement of a cash deposit upon acceptance of Eikon's offer. The Agreement states that, within thirty days after receipt of the Invoking Member's notice, the member who will purchase the other's interest must deliver to the other member "cash in an amount equal to ten percent (10%) of the Stated Amount." This deposit would be returned to the purchaser after a successful closing. If the seller defaulted or was otherwise unable to complete the sale, then the deposit would be returned to the purchaser. On the other hand, if the purchaser defaulted, then the deposit could be kept by the seller as liquidated damages.
The Stated Amount offered by Eikon and accepted by Lone Star was $145,432,132.00. Thus, Lone Star should have delivered $14,543,213.00 in cash to Eikon. Instead, Lone Star notified Eikon that it was depositing $14,543,213.00 in an escrow account, in the form of a cashier's check for $2,015,112.00 plus a letter of credit in the amount of $12,528,101.00. According to Lone Star, the funds were to be held for Eikon's benefit, but the escrow structure would ensure the return of the deposit to Lone Star if the sale did not close. We agree with Eikon that the placement of these funds in escrow for Eikon's benefit was not equivalent to delivering a cash deposit to Eikon as the Agreement contemplated. Nevertheless, *769 we conclude this variance is not determinative of the appeal. The purpose of the deposit was to assure the sale took place once the offer had been made and accepted. In this instance, the parties did go forward and close the sale. Accordingly, had the deposit been delivered in cash to Eikon, Eikon would have been required to return it to Lone Star at the closing in any event.
Eikon argues it did not waive its complaint by attending the closing. We agree, but our decision is not based on a waiver theory. Instead, we conclude that issues involving the cash deposit would only become relevant if the sale had not closed. In that event, we would need to ask whose default prevented the closing and, as a result, who would be allowed to keep the deposit. As it is, the closing took place, and those questions need not be addressed.
We reject this second argument under Eikon's first point.

Tender of Immediately Available Funds at Closing
The Agreement required Lone Star to pay the purchase price for Eikon's interest in "cash or other immediately available funds" at the closing. Appellant's final argument under this point is that Lone Star failed to comply with this provision when it delivered a cashier's check in the amount of $4,071,429.00the price demanded by Eikon in its original notice while expressly reserving its rights in what it consistently argued was the erroneously-calculated portion of that payment.
Eikon does not argue that the cashier's check was not "immediately available funds." Instead, Eikon argues that the reservation of rights somehow rendered the funds unavailable. Eikon's argument is unavailing. In fact, by the time of the closing, Eikon itself had already filed suit over performance issues. Both parties were entitled to proceed to closing while reserving their rights to litigate the amount finally due at closing. Lone Star tendered the largest amount possibly due; it paid that amount in the form of a cashier's check, which certainly qualifies as immediately available funds. Lone Star was entitled to express its intention to pursue its rights to some of those funds, and doing so did not change the availability of the funds during the interim.
We reject this final argument under Eikon's first point. The trial court correctly entered summary judgment in favor of Lone Star on Eikon's breach of contract claim. We resolve the entire first point against Eikon.

LIQUIDATED DAMAGES
In Eikon's own motion for summary judgment, it sought recovery of the ten percent buy-sell deposit as liquidated damages for Lone Star's purported breaches of the Agreement. The trial court denied that recovery, and Eikon complains of the denial in its second appeal point. The liquidated damages provision of the Agreement provides that the seller may retain the deposit in the event the purchaser "defaults in its obligation to purchase the interests of the [seller]." We read this provision to allow liquidated damages only if the closing does not take place or if the seller is otherwise unable or unwilling to perform at the closing. Neither was the case here. Therefore, the trial court correctly denied Eikon's motion for summary judgment related to liquidated damages.
We decide Eikon's second point against it.

CONVERSION
Eikon argues next that the trial court erroneously granted Lone Star's motion *770 for summary judgment on Eikon's conversion claim. Eikon claims Lone Star is guilty of conversion because it effectuated the forced sale using the Agreement-based power of attorney to sign documents Eikon refused to sign. Our supreme court has defined conversion as "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 391 (Tex.1997). Eikon argues the use of the power of attorney was "wrongful because Lone Star failed to meet all of the conditions precedent to exercising its right to force Eikon to sell that interest." In other words, the conversion argument is based upon the same three arguments set forth in Eikon's breach of contract claim. We have ruled against Eikon on those arguments. The Agreement gave a power of attorney to the purchaser in anticipation of this precise scenario, i.e., in the event the seller refused to execute necessary documents. When Eikon accepted Lone Star's payment, but refused to execute closing documents, Lone Star properly exercised the power of attorney granted by the Agreement. The trial court correctly granted summary judgment on the conversion claim.
We decide Eikon's third point against it.

ATTORNEY'S FEES
Eikon's fourth point complains of the trial court's award of attorney's fees to Lone Star. Following Eikon's first notice of appeal, this Court remanded the case to the trial court for determination of the attorney's fees claim by Lone Star. The transcript of the hearing on this issue on remand indicates Lone Star offered affidavit testimony in favor of its claim, and the trial court ultimately awarded the fees on that basis. Among other objections, counsel for Eikon argued the affidavits were inadmissible hearsay and demanded live testimony be offered. Counsel for Lone Star responded that the hearing was an extension of the original summary judgment proceeding, making affidavit testimony appropriate. The trial court overruled the hearsay objection, but it gave Lone Star the opportunity to offer live testimony. Counsel for Lone Star stated the witnesses were present; nevertheless, counsel eventually declined to offer the live testimony. We have carefully reviewed Lone Star's summary judgment motion; it does not request an award of attorney's fees. Similarly, we have reviewed Lone Star's motion for award and determination of attorney's fees; it makes absolutely no reference to summary judgment rules or procedure. We conclude the proceedings on remand were not summary judgment proceedings. Accordingly, Eikon's objection to the affidavits on hearsay grounds was appropriate, and the award of fees based on affidavit testimony was improper. See Tex.R. Evid. 802 (hearsay not admissible); see also Meachum v. Comm'n for Lawyer Discipline, 36 S.W.3d 612, 614-15 (Tex.App.-Dallas 2000, pet. denied) (client affidavit was inadmissible hearsay); Geo-Chem Tech Corp. v. Verseckes, 929 S.W.2d 85, 92-93 (Tex.App.-Eastland 1996) (hearsay evidence of fees incorrectly admitted), rev'd on other grounds, 962 S.W.2d 541 (Tex. 1998).
Eikon's fourth point is well-taken, and we resolve it in Eikon's favor.

BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING AND BREACH OF FIDUCIARY DUTY
In its fifth point, Eikon argues the summary judgment granted in favor of Lone Star incorrectly disposed of two claimsbreach of the duty of good faith and fair dealing and breach of fiduciary dutyalthough neither claim was addressed *771 in Lone Star's motion. Our rules of civil procedure provide that a motion for summary judgment shall state the specific grounds upon which it is based and that judgment shall be granted if "the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." Tex.R. Civ. P. 166a. Summary judgment may not be granted, as a matter of law, on a cause of action not addressed in a summary judgment motion. Black v. Victoria Lloyds Ins. Co., 797 S.W.2d 20, 27 (Tex.1990). Lone Star's motion for summary judgment did not address either of these claims.
Lone Star argues, however, that the breach of fiduciary duty claim was untimely. The record supports Lone Star's position: the first mention of a breach of fiduciary claim is in Plaintiffs' Fourth Amended Petition, filed May 23, 2002. That date was more than two months after the trial court entered its initial summary judgment in the case, more than a month after Eikon filed its initial notice of appeal, and ten days after this Court abated the appeal to allow the trial court to determine the issue of attorney's fees. Texas pleading laws are liberal, however, any pleading "offered for filing within seven days of the date of trial or thereafter... shall be filed only after leave of the judge is obtained." Tex.R. Civ. P. 63 (emphasis added). The record contains no indication the trial court granted leave to file the amended pleading. Moreover, this Court's orders abating the appeal stressed that the abatement was "to allow the trial court additional time to determine the sole issue of attorney's fees." Eikon's claim for breach of fiduciary duty was never before the trial court. Accordingly, the trial court's judgment did not need to address the claim.
Nor was a claim for breach of the duty of good faith and fair dealing before the trial court. The only reference in Eikon's live petition to "good faith and fair dealing" was found in a single sentence under the breach of contract heading, wherein Lone Star's conduct was described as being "in violation of [Lone Star's] covenant of good faith and fair dealing." This passing reference to a covenant of good faith was hardly sufficient to put any defendant on notice that Eikon sought recovery for the independent tort alleged on appeal. Pleadings must give "fair notice of the claim involved." Tex.R. Civ. P. 47(a). As a matter of law, Eikon's pleading did not give fair notice that it intended to pursue a claim for breach of the duty of good faith and fair dealing.
We conclude that neither of these claims was appropriately raised in Eikon's timely filed pleading. We resolve Eikon's fifth point against it.

JURY TRIAL ON REMAND
In its final appeal point, Eikon asks that any remanded claims be tried by a jury. The parties agree that the Agreement contains a waiver of the right to trial by jury. Nonetheless, Eikon made a jury demand. The trial court granted Lone Star's motion to strike the demand. The question on appeal is whether Lone Star waived its right to complain of the jury demand because of a purported delay in raising its objection.
Our resolution of this appeal does not include any remanded claims. Accordingly, this final point is moot.

CONCLUSION
We have resolved Eikon's fourth point in its favor, but we have resolved the remainder of Eikon's points against it. We reverse the judgment of the trial court awarding Lone Star attorney's fees, and *772 we render judgment that Lone Star recover no attorney's fees from Eikon. In all other respects, we affirm the judgment of the trial court.
NOTES
[1] The formula subtracted from the Stated Amount the company's debts and liabilities and an agreed-upon percentage (three percent) for closing costs. The remainder of the hypothetical purchase priceno reserves were to be establishedwas to be apportioned between the members in accordance with the Agreement's provisions for income sharing.
[2] The declaratory judgment suit sought a sale at the price of $2,015,112 or, in the alternative, at the price determined by a trier of fact to be the appropriate one derived from the Stated Amount set forth in Eikon's buy-sell notice.
[3] Lone Star's motion asserted:

(1) as a matter of law, the buy-sell option agreement provided the formula to compute the purchase price;
(2) the trial court was required to calculate the correct purchase price based upon the agreement; the correct price is $2,015,112the amount Eikon withdrew from the trial court's registry;
(3) as a matter of law, Eikon failed to properly apply the agreement's buy-sell option provision;
(4) as a matter of law, Eikon cannot insist on strict performance of the buy-sell option agreement after breaching its express terms;
(5) as a matter of law, Eikon cannot establish a cause of action for conversion; additionally, there is no evidence Lone Star converted anything;
(6) as a matter of law, Eikon cannot establish a cause of action for fraud, fraudulent inducement, or promissory estoppel; additionally, there is no evidence to support such a cause of action;
(7) as a matter of law, Eikon has waived its right to recover exemplary damages;
(8) as a matter of law, Eikon has waived its right to a jury trial;
(9) allowing Eikon to keep the deposit would constitute an unenforceable penalty; and
(10) Eikon waived its claims by accepting the money and closing the transaction and is estopped from asserting its claims.
[4] Eikon sought judgment awarding it liquidated damages because (1) Lone Star failed to tender the cash buy-sell deposit, and (2) Lone Star did not tender "unfettered funds" at closing.
[5] Eikon identifies these three purported performance flaws as conditions precedent to its own obligation to perform. We disagree. The buy-sell provision sets forth a mechanical procedure for removing one of the two members of the company. The procedural obligations of each party are independent performance obligations, not conditions precedent.
[6] Specifically, Lone Star chargedand Eikon did not disputethat Eikon did not begin with the Stated Amount and calculate forward from that number, as the Agreement plainly requires, but instead started with a share price it was willing to pay and calculated backward to a "Stated Amount." Beyond this erroneous methodology, Lone Star charged that Eikon's calculations (1) failed to deduct exit fees owed to a non-member lender, (2) failed to account for accrued interest, (3) incorrectly calculated the three percent closing costs, and (4) applied the wrong percentage ratio when determining the parties' respective interests.
[7] We note that Eikon pleaded both that the terms of the Agreement were "clear and unambiguous" (see Plaintiffs' Third Amended Petition) and that those terms were "ambiguous" (see Counter-Defendant's Amended Answer). We conclude the buy-sell provision of the Agreement is not ambiguous.
[8] Eikon's one-sentence reference to the "arguments and proof" in its summary judgment response does not explainnor does the responsehow Lone Star's corrections are incorrect.