Opinion issued January 17, 2008 









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00054-CV

__________


MICHAEL J. VALENTINE, Appellant


V.


LLOYD CUNNINGHAM, JR. AND CUNNINGHAM & ASSOCIATES, P.C.,
Appellees






On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. 1999-33151






MEMORANDUM OPINION

 Appellant, Michael J. Valentine, challenges the trial court's rendition of
summary judgment (1)
 in favor of appellees, Lloyd R. Cunningham, Jr. and Cunningham
& Associates, P.C. (collectively "Cunningham"), in Valentine's suit against
Cunningham for an attorney referral fee. In four issues, Valentine contends that the
trial court erred in granting summary judgment in favor of Cunningham on
Valentine's breach of contract, fraud, misrepresentation, and breach of fiduciary duty
claims and on Cunningham's affirmative defenses of waiver and estoppel.

 We affirm. Factual and Procedural Background

 In his petition, Valentine alleged that between July and December 1996 he
performed legal work for his clients Anatoly and Beryle Sverdlin. On or about
January 15, 1997, the Sverdlins contacted Valentine and told him that there had been
a "take over" at Anatoly Sverdlin's company and that Sverdlin's employment had
been terminated. Valentine met with the Sverdlins to discuss the imminent litigation
arising from these events, but, due to the potential size of the case and in light of
Valentine's other obligations, Valentine eventually contacted Cunningham to see if
he would represent the Sverdlins in these matters. Valentine described the case to
Cunningham as "a potential big case involving corporate control and breach of
fiduciary duty issues." Valentine told the Sverdlins that he was going to introduce
them to Cunningham and that either "he [Valentine] would be paid a share out of the
case if he were to represent Sverdlin or a share out of the billings by Cunningham"
if Cunningham accepted the representation. 

 Valentine further alleged that, on January 17, 1997, Valentine, the Sverdlins,
and Cunningham met. During the meeting, the group learned that attorneys for
Valentine's company had set a hearing on an application for a temporary restraining
order. Valentine and Cunningham drove to the courthouse for the hearing, and, "[o]n
the way to the courthouse," before Cunningham ever agreed to represent Anatoly
Sverdlin, he and Cunningham discussed "the referral fee." As alleged by Valentine,
the "referral of the representation was expressly conditioned upon Cunningham . . .
agreeing to pay a referral fee." Valentine and Cunningham then "negotiated the
amount of the referral fee," and Valetine ultimately accepted Cunningham's counter-offer "of a referral fee of 15% of gross attorney billings." "Separate and apart [from]
the referral fee," Valentine and Cunningham further agreed that Valentine might do
"additional work on the case" and that Valentine would be paid $175 per hour for any
work he performed. Cunningham represented Sverdlin at the hearing, and sometime
thereafter Cunningham "fully accepted the referral" of the case. Cunningham
"reaffirmed the promised referral fee" in June 1998. In early 1999, after
Cunningham's successful prosecution of the case, Cunningham disputed Valentine's
claim that he ever agreed to pay any referral fee. 

 In support of his breach of contract claim, Valentine alleged that he and
Cunningham "entered into an enforceable oral express or implied in fact agreement." 
In a section of his petition entitled "quasi contract," Valentine asserted that
Cunningham was "bound by a promise implied at law" and that Valentine provided
a "valuable service to Cunningham" and "expect[ed] to be paid." In the section of his
petition entitled "fraud," Valentine asserted only that Cunningham "engaged in fraud
by conduct and/or promissory fraud." Valentine did not allege any specific facts in
support of this fraud claim. Finally, in a section of his petition entitled "alternative
claims based on disputed novation agreement," Valentine contended that, if the trial
court accepted Cunningham's argument that any referral fee agreement had been
replaced by a subsequently negotiated contingency fee agreement between Valentine
and Sverdlin, then Valentine sued Sverdlin and Cunningham for the "value of the
contingency agreement." (2)

 Cunningham filed a summary judgment motion, in which he argued that
Valentine's claims fail as a matter of law for a number of reasons, including (1) the
alleged oral referral fee agreement for 15% of "gross attorney billings" contemplated
only "hourly billings," and Valentine was not entitled to any referral fee because
Sverdlin paid Cunningham pursuant to a subsequently negotiated contingency fee
agreement, (2) Valentine, at most, alleged an "unenforceable oral agreement to
agree," (3) Valentine, even according to his own admissions, subsequently
renegotiated any alleged oral referral fee agreement with Cunningham and replaced
it with a new and separate agreement directly with Sverdlin for a 10% contingency
fee interest in the entire case, (4) the alleged oral referral fee agreement was not
supported by consideration and violated the statute of frauds, (5) Valentine's claim
to an interest in the contingency fee violated Valentine's ethical responsibilities
because Valentine served as an expert witness in the case, any such agreement was
not in writing, and Valentine acted as Sverdlin's independent attorney in reviewing
the contingency fee agreement without disclosing that he claimed an interest in the
contingency fee, (6) Valentine's claims are barred by public policy, (7) Valentine's
unjust enrichment claim fails because he was fully paid for the work performed, and
(8) Valentine's fraud claim fails because it arose out of his breach of contract claim
and because no evidence supports the elements of his claim, including detrimental
reliance or injury. Cunningham also asserted no-evidence grounds in his summary
judgment motion as to the elements of each of Valentine's claims. 

 The trial court, without specifying its reasons, granted Cunningham summary
judgment and ordered that Valentine's claims be denied. 

Standard of Review

 To prevail on a summary judgment motion, a movant has the burden of proving
that it is entitled to judgment as a matter of law and that there is no genuine issue of
material fact. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995). When a defendant moves for summary judgment, it must either (1) disprove
at least one element of the plaintiff's cause of action or (2) plead and conclusively
establish each essential element of its affirmative defense, thereby defeating the
plaintiff's cause of action. Cathey, 900 S.W.2d at 341. When deciding whether there
is a disputed, material fact issue precluding summary judgment, evidence favorable
to the non-movant will be taken as true. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546, 548-49 (Tex. 1985). Every reasonable inference must be indulged in favor of
the non-movant and any doubts must be resolved in its favor. Id. at 549.

 To prevail on a no-evidence summary judgment motion, a movant must allege
that there is no evidence of an essential element of the adverse party's cause of action.
Tex. R. Civ. P. 166a(i); Fort Worth Osteopathic Hosp., Inc. v. Reese, 148 S.W.3d 94,
99 (Tex. 2004). Although the non-moving party is not required to marshal its proof,
it must present evidence that raises a genuine issue of material fact on each of the
challenged elements. Tex. R. Civ. P. 166a(i); Ford Motor Co. v. Ridgway, 135
S.W.3d 598, 600 (Tex. 2004). A no-evidence summary judgment motion may not be
granted if the non-movant brings forth more than a scintilla of evidence to raise a
genuine issue of material fact on the challenged elements. Ridgway, 135 S.W.3d at
600. 

Breach of Contract

 In his first issue, Valentine argues that the trial court erred in granting summary
judgment in favor of Cunningham on his breach of contract claim because there is no
legal basis to void the alleged oral referral fee agreement under the disciplinary rules,
the agreement was permitted under Texas law, the agreement vested when
Cunningham accepted representation, the agreement was supported by consideration,
and the agreement was not replaced by a subsequent agreement.

 The elements of a breach of contract claim are (1) the existence of a valid
contract between plaintiff and defendant, (2) the plaintiff's performance or tender of
performance, (3) the defendant's breach of the contract, and (4) the plaintiff's damage
as a result of the breach. Prime Prods., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631,
636 (Tex. App.--Houston [1st Dist.] 2002, pet. denied). The elements of a valid
contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each
party's consent to the terms, and (5) execution and delivery of the contract with the
intent that it be mutual and binding. Id. To establish a valid contract, a plaintiff must
prove that the parties agreed on all of the essential terms of the contract and that the
essential terms were sufficiently certain so as to define the parties' legal obligations. 
See Nickerson v. E.I.L. Instruments, Inc., 874 S.W.2d 936, 939 (Tex. App.--Houston
[1st Dist.] 1994, writ denied). If a contract is so indefinite that a court cannot
determine the legal obligations and liabilities of the parties, it is not enforceable. See
T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992); Moore
v. Dilworth, 142 Tex. 538, 542-43, 179 S.W.2d 940, 942 (1944); Cytogenix, Inc. v.
Waldroff, 213 S.W.3d 479, 485 (Tex. App.--Houston [1st Dist.] 2006, pet. denied). 

 Here, Valentine asserts that he made an oral agreement with Cunningham for
a referral fee of 15% of gross attorney billings. Valentine further asserts that,
although Cunningham and Sverdlin entered into a contingency fee agreement rather
than an hourly fee agreement, Valentine and Cunningham's alleged oral referral fee
agreement encompassed the contingency fee.

 Valentine does not clearly identify the specific evidence on which he relies to
support his breach of contract claim. Instead, he focuses his appellate briefing on
why his alleged oral referral fee agreement for 15% of the contingency fee does not
violate disciplinary rules or public policy. Nevertheless, our review of the evidence
indicates that the only direct testimony that potentially supports any type of breach
of contract claim came from Valentine, who testified in his deposition that, as he and
Cunningham drove to the courthouse for the hearing on the temporary restraining
order, he told Cunningham that he expected a referral fee for the case. He further
testified that he told Cunningham that "a third [was] customary," Cunningham
responded that a third was "too much," and Valentine asked Cunningham what he
thought was "fair." According to Valentine, Cunningham then answered 15%, and
Valentine said "Okay." Valentine and Cunningham did not reduce this alleged oral
referral fee agreement to writing. 

 On January 21, 1997, Valentine sent Cunningham a letter to confirm that they
had, in fact, discussed an oral referral fee agreement in the car on the way to the
courthouse. This letter, signed by Valentine and contained in the summary judgment
record, provided,

The purpose of this letter is to set forth our agreement regarding the
above client and case. We have agreed that I will continue to work on
the case on a consulting basis. . . . We have agreed that I will bill your
firm at the rate of $175.00 per hour and your firm will bill the client. . . .
We have further agreed that in exchange for the referral of this matter,
your firm will pay me a referral fee of 15% of the gross attorney billings
(exclusive of my own) on this case. It is my understanding that your
firm's agreement with the client is for hourly billing. Should this be
renegotiated to another alternative billing arrangement, i.e. contingency
fee, I expect that we would renegotiate our agreement. If you are in
agreement with this letter, please sign the copy and return it to me.


(Emphasis added).

 Valentine provided a space for Cunningham's signature at the bottom of the
letter. Cunningham denied receiving the letter, and it is undisputed that Cunningham
never signed this letter. Regardless, the letter actually defeats, rather than supports,
Valentine's contention that any alleged oral referral fee agreement between
Cunningham and him encompassed the subsequently negotiated contingency fee. At
most, this letter confirms that, at the time Valentine and Cunningham formed their
alleged oral referral fee agreement, Valentine sought as a referral fee a percentage of
fees incurred from Cunningham's hourly billings. The letter itself states that, in the
event an alternative billing arrangement was made, including a contingency fee
agreement, Valentine "expect[ed]" to renegotiate. No evidence shows that this
"expectation" was ever confirmed by Cunningham.

 Valentine's letter provides no detail as to what Valentine would have expected
to receive in the event the billing arrangement changed to a contingency fee. 
Valentine seems to suggest that his oral agreement would simply transform to
automatically entitle him to 15% of the contingency fee. Of course, the referral fee
due Valentine under these circumstances could vary significantly from a referral fee
calculated on hourly billings. Moreover, even if the letter provided some evidence
that Valentine and Cunningham agreed to renegotiate a referral fee upon a change to
a contingency fee agreement, the record contains no evidence as to the essential terms
of any renegotiated agreement. See Neely v. Bankers Trust Co. of Tex., 757 F.2d 621,
630 (5th Cir. 1985) (applying Texas law; holding that indefiniteness of essential part
of agreement rendered whole contract unenforceable and that "[a]s a matter of law,
no contract arose"); see also Gavrel v. Nichols, No. 01-03-00465-CV, 2004 WL
1688774, at *3 (Tex. App.--Houston [1st Dist.] July 29, 2004, pet. denied) (mem.
op.) (holding that reasonable person, at time of contracting, would regard amount of
attorney referral fee as "vitally important" term and that breach of contract claim to
recover fee failed as matter of law because, although there was some evidence of
agreement to pay fee, there was no evidence of agreement to pay "specific amount"
of referral fee). 

 In addition to the failure to specify the amount Valentine "expected" from a
subsequently negotiated contingency fee, the alleged oral referral fee agreement also
failed to include other terms that could be considered essential, such as whether the
referral fee would be calculated before or after the deduction of expenses and costs
and how it would be calculated if additional attorneys were retained to represent
Sverdlin. (3) Although Valentine offered conflicting testimony on these issues, even
Valentine admitted in his deposition testimony that he did not know whether he was
to receive, under this alleged agreement, 15% of attorney's fees before or after
expenses. The alleged oral referral agreement, at most, supplied the term of 15% of
hourly billings, but it omitted all other essential terms. See Meru v. Huerta, 136
S.W.3d 383, 390 (Tex. App.--Corpus Christi 2004, no pet.) (stating that essential
terms of oral contract must be definite, clear, and certain); Gannon v. Baker, 830
S.W.2d 706, 709 (Tex. App.--Houston [1st Dist.] 1992, writ denied) (same). 

 The narrow scope of Valentine's alleged oral referral fee agreement is further
confirmed by Valentine's testimony, in which he agreed that it was his understanding,
at the time he formed the agreement, that Cunningham was going to provide legal
services at a "straight hourly rate" because Sverdlin was in an economic position to
pay hourly fees. Valentine's own testimony establishes that, whatever the terms of
this alleged oral referral fee agreement were, neither he nor Cunningham ever
contemplated an agreement whereby Cunningham would pay Valentine 15% of a
contingency fee. 

 Thus, even if Valentine had presented sufficient evidence to raise a fact issue
as to whether or not he was entitled to 15% of Cunningham's hourly billings,
Valentine's breach of contract claim goes well beyond any such agreement. (4) In his
petition, Valentine is seeking to recover 15% of the contingency fee. But there is
simply no evidence that any such agreement existed. In fact, Valentine's testimony,
and his January 21, 1997 letter, establish, as a matter of law, that there was never any
enforceable oral referral fee agreement for the terms on which Valentine seeks to
recover. 

 In sum, the summary judgment evidence affirmatively establishes that there
was never a meeting of the minds as to Valentine's entitlement to a referral fee for
15% of the subsequently negotiated contingency fee and that the parties did not agree
on the essential terms of the purported contract. Accordingly, we hold that there was
never an enforceable contract between Valentine and Cunningham for the terms being
sued upon and that Valentine's breach of contract claim fails as a matter of law. We
further hold that the trial court did not err in granting Cunningham summary
judgment on Valentine's breach of contract claim.

 We note that, in his deposition testimony, Valentine contradictorily testified
that the oral referral fee agreement he had with Cunningham had been renegotiated
with Sverdlin when, in January 1997, he and Cunningham met with Sverdlin, and
Sverdlin told Valentine and Cunningham that he would "make [them] rich." 
Valentine testified that, around this time, the case was converted into a contingency
fee agreement. According to his alleged new agreement with Sverdlin, Valentine
"was supposed to get 10% and [Cunningham] was supposed to get 40%," resulting
in a 50% contingency fee to be charged to Sverdlin. Valentine even agreed that the
15% Cunningham was going to pay him from the oral referral fee agreement "turned
into" (5) the 10% Sverdlin was going to pay him directly through this new agreement. 
However, Valentine never secured this alleged new agreement (for a 10%
contingency fee) in writing from Sverdlin. Instead, similar to his conduct in trying
to memorialize his alleged oral agreement with Cunningham, Valentine sought to
memorialize this new agreement with Sverdlin in a subsequent letter. Valentine sent
this letter, addressed solely to Sverdlin in November 1998, almost two years after he
allegedly formed this new agreement with Sverdlin. In this letter, Valentine wrote,

 The purpose of this letter is to memorialize our agreement
regarding payment for legal services performed by me on your behalf.
. . . 


 We agreed that in January 1997 . . . that you would pay me for my
services by assigning and conveying to me an undivided 10% interest
in the total recovery . . . .This fee would also be in the nature of a
referral fee paid by you, not by Mr. Cunningham as is customary. . . . 


 We made this agreement when you offered to pay Mr.
Cunningham and I [sic] fifty percent (50%) of the total recovery in the
Dispute, rather than pay an hourly rate. We all agreed that Mr.
Cunningham would get a forty percent (40%) fee and that I would get
a ten percent (10%) fee. . . .


 For various reasons, our agreement was never reduced to writing. 
At the request of several persons, I have waited until now to bring this
issue to your attention. I would now appreciate the courtesy of a signed
agreement. . . . 


 Attached to this letter is an assignment from you to me . . . . I have
left the percent blank. I would appreciate your filling in what you
consider to be fair compensation for me, considering my role in the
referral, my past services, and my future services. I know you are an
honorable man. You will do the right thing; of this I have no doubt. . . . 


(Emphasis added). Sverdlin never signed this letter, and, in his affidavit testimony,
he denied ever granting Valentine a contingent interest in the case. 

 On January 29, 1999, after Cunningham and Sverdlin both denied agreeing to
pay Valentine either a referral fee or contingent interest, Valentine sent a demand
letter to both Cunningham and Sverdlin, in which he stated,

 The purpose of this letter is to make demand upon Mr. Sverdlin
and Mr. Cunningham that they jointly honor our agreement to pay me
a portion of the proceeds from the above referenced lawsuit. I was hired
by Mr. Sverdlin . . . I referred the case to Mr. Cunningham. Mr.
Cunningham and I agreed [upon] a referral agreement verbally the day
I referred the case to him. I reduced the referral agreement to writing.
. . .


 Subsequent to this, Mr. Sverdlin, Mr. Cunningham, and I agreed
to modify our fee agreement from an hourly fee agreement to a
contingent fee agreement. Mr. Sverdlin proposed to pay Mr.
Cunningham and I a 50% contingent fee of all proceeds . . . His exact
words were, "I make [sic] you rich." We agreed. The terms of the
agreement were that Mr. Cunningham would receive a 40% contingent
fee of all proceeds and I would receive a 10% contingent fee of all
proceeds. . . .

 

 For reasons I will not set forth herein, at Mr. Cunningham's
request, I never reduced the subsequent contingent fee agreement to
writing. Mr. Sverdlin and Mr. Cunningham have now repudiated our
agreement . . . .


 Valentine's letters not only indicate that Valentine repeatedly failed to reduce
his fee agreements to writing, but further confirm that Valentine's alleged oral referral
fee agreement with Cunningham contemplated, at most, a percentage of gross
attorney's fees billed hourly. These letters, as well as Valentine's testimony, also
confirm that, throughout the history of this dispute, Valentine has asserted contrary
positions with regard to who owed him fees and for how much. (6) 

 We overrule Valentine's first issue. 

Fraud

 In his second issue, Valentine argues that the trial court erred in granting
summary judgment in favor of Cunningham on Valentine's claims for fraud and
misrepresentation because fact issues "exist which preclude summary judgment." 

 In his petition, in support of his fraud claim, Valentine alleged only that
Cunningham "engaged in fraud by conduct and/or promissory fraud and such fraud
has been the proximate cause of damages to Valentine." He alleged no additional
facts to support the fraud claim. In his appellate briefing, Valentine more specifically
asserts that Cunningham committed fraud by promising to pay him a referral fee but
later denying that he made any such promise. Valentine also asserts that Cunningham
never intended to pay a referral fee. 

 To prove a fraud claim, a plaintiff must show (1) that a material representation
was made; (2) the representation was false; (3) when the representation was made, the
speaker knew it was false or made it recklessly without any knowledge of the truth
and as a positive assertion; (4) the speaker made the representation with the intent
that the other party should act upon it; (5) the party acted in reliance on the
representation; and (6) the party thereby suffered injury. In re FirstMerit Bank, N.A.,
52 S.W.3d 749, 758 (Tex. 2001); Johnson & Higgins of Texas, Inc. v. Kenneco
Energy, Inc., 962 S.W.2d 507, 524 (Tex. 1998).

 Even assuming that Valentine adequately pleaded a fraud claim in his petition,
we conclude that the summary judgment record establishes, as a matter of law, that
Cunningham did not commit fraud because he did not make any material
representations that were false. As stated above in our discussion of Valentine's
breach of contract claim, the evidence establishes that Cunningham, at most, agreed
that a fair referral fee might constitute 15% of hourly billings. Valentine contends
that this agreement should have encompassed 15% of the contingency fee. However,
the evidence shows that Cunningham never made any representations to support this
contention. In fact, Valentine's own letters and testimony establish that the parties
never contemplated a referral fee based on a percentage of any contingency fee. The
evidence shows only that Valentine may have expected this issue to be renegotiated
in the future. Valentine, by his own conduct, attempted to transform any sort of oral
referral fee agreement he had with Cunningham for hourly billings into an entirely
different agreement for a portion of the contingency fee. 

 Moreover, Valentine's allegations that Cunningham committed "fraud" by
preventing him from securing his 10% contingency interest offered to him by
Sverdlin are not supported by the record. Contrary to Valentine's allegations, there
is simply no evidence that Cunningham committed fraud by failing to "secure
[Sverdlin's] signature on the written fee agreement," "cultivat[ing] dissension
between [Sverdlin] and [Valentine]," or making "it impossible for [Valentine] to get
a signed written contract." In fact, Sverdlin himself has denied orally granting
Valentine a contingent interest in the case. (7) Accordingly, we hold that Valentine's
fraud claim fails as a matter of law and that the trial court did not err in granting
Cunningham summary judgment on Valentine's fraud claim.

 We overrule Valentine's second issue.

Breach of Fiduciary Duty

 In his third issue, Valentine contends that the trial court erred in granting
summary judgment in favor of Cunningham on Valentine's claims for breach of
fiduciary duty. 

 In his petition, Valentine did not assert a breach of fiduciary duty claim and did
not plead any facts supporting such a claim. There was nothing in Valentine's
pleadings sufficient to put Cunningham on notice that Valentine sought recovery for
a breach of fiduciary duty. Pleadings must give "fair notice of the claim involved."
Tex. R. Civ. P. 47(a); see also Eikon King St. Manager, L.L.C. v. LSF King St.
Manager, L.L.C., 109 S.W.3d 762, 771 (Tex. App.--Dallas 2003, pet. denied). 
Valentine's claim for a breach of fiduciary duty was not before the trial court at the
time it granted summary judgment in favor of Cunningham, and Valentine cannot
raise such a claim for the first time on appeal. See Baxter v. Gardere Wynne Sewell
LLP, 182 S.W.3d 460, 465 (Tex. App.--Dallas 2006, pet. denied); Loera v. Interstate
Inv. Corp., 93 S.W.3d 224, 228 (Tex. App.--Houston [14th Dist] 2002, pet. denied);
see also Tex. R. App. P. 33.1(a).

 We overrule Valentine's third issue.

Conclusion

 Having held that the trial court did not err in granting Cunningham summary
judgment on Valentine's breach of contract and fraud claims, and having held that
Valentine cannot assert a breach of fiduciary duty claim for the first time on appeal,
we need not address Valentine's fourth issue, in which he contends that the trial court
erred in granting summary judgment in favor of Cunningham on Cunningham's
affirmative defenses of waiver and estoppel. 

 We affirm the judgment of the trial court. 


 

 Terry Jennings

 Justice


Panel consists of Justices Nuchia, Jennings, and Keyes.



1. See Tex. R. Civ. P. 166a(c), 166a(i).

2. Sverdlin is not a party to this appeal, and Valentine agrees in his briefing that he is not
pursuing any relief against Sverdlin.
3. The lack of an enforceable referral agreement containing the terms on which
Valentine seeks to recover is further illustrated by the fact that Cunningham
subsequently engaged additional counsel to represent Sverdlin in the litigation and,
pursuant to a written agreement with this additional counsel, the additional counsel
recovered a portion of the contingency fee. Valentine's alleged oral referral fee
agreement does not address how his alleged entitlement to a portion of the
contingency fee would be impacted by the retention of additional counsel. For
example, it is unclear if Valentine claims that he is entitled to 15% of the contingency
fee paid to Cunningham or 15% of the entire fee paid by Sverdlin (including the
portion paid to the additional counsel). 
4. This is likely due to the fact that, because Cunningham and Sverdlin entered into a
contingency fee agreement shortly after commencing representation, Cunningham
never billed Sverdlin for any hourly attorney's fees. The summary judgment evidence,
including Cunningham's affidavit, establishes that Cunningham received payment
solely through a contingency fee and never received any fees through any hourly
billing. Valentine argues that there is some evidence that Cunningham was "paid,
under the contingency fee agreement, based upon an hourly attorney billing formula." 
However, the evidence cited by Valentine shows only that hourly billing records were
used to split the contingency fee, pursuant to a written fee sharing agreement, between
Cunningham and another firm retained on behalf of Sverdlin. Valentine presented 
no evidence that the total contingent fee was calculated on the number of hours billed.

5. Valentine contradictorily testified during his deposition that he did not renegotiate the
15% agreement with Cunningham. 
6. Valentine's attempt to recover fees on two competing sets of facts and Valentine's
repeated failure to secure fee agreements in writing (including a contingent fee
agreement negotiated directly with a client) is cause for concern. More troubling is
Valentine's admission that he reviewed the terms of Sverdlin's and Cunningham's
contingent fee agreement on Sverdlin's behalf, as Sverdlin's "personal" lawyer, while
at the same time claiming an interest in a percentage of the contingent fee provided
for in the agreement. Valentine concedes in his appellate briefing that Cunningham
asked him to "independently" review the contingency fee agreement for Sverdlin "to
prevent any potential overreaching." Nevertheless, in light of our holdings that the
summary judgment evidence affirmatively established that there was never an
enforceable contract, we do not address Cunningham's arguments that Valentine
violated disciplinary rules in the course of the underlying proceedings.
7. Valentine cites the affidavit testimony of William Patterson, Sverdlin's former father-in-law, who testified that he was at some of the meetings with Cunningham,
Valentine, and Sverdlin when fees were discussed. Patterson's testimony is
conclusory and does not support Valentine's claim for 15% of Cunningham's
contingency fee. Patterson testified only that there was some sort of agreement
between Cunningham and Sverdlin regarding fees, but Patterson provided no detail
as to the terms of the alleged agreement. Additionally, most of Patterson's testimony
concerns Sverdlin's alleged agreement to grant Valentine a 10% contingent interest
in the case. Patterson's affidavit provides no evidence that Cunningham made any
misrepresentations to Valentine.