W. Dennis STRIPLING, M.D.,
Appellant,

v.

Geneva McKINLEY and Albert
McKinley, Appellees.

No. 05–86–01183–CV.

Court of Appeals of Texas,
Dallas.

Feb. 4, 1988.
Rehearing Denied March 15, 1988.

Deborah G. Hardwick, Dallas, for appellant.

Bonnie Wulff, Dallas, for appellees.

Before WHITHAM, BAKER and HECHT, JJ.

HECHT, Justice.

The signal issue in this medical malpractice case is whether causation is an element of an action for negligent failure to disclose the risks involved in a surgical procedure. We hold that it is.

Geneva McKinley[1] sued Dr. W. Dennis Stripling for damages, alleging that he negligently failed to disclose to her the risks of tendon transfer surgery before performing that procedure on her hand. McKinley refused to request the trial court to inquire of the jury whether Dr. Stripling's failure to disclose was a proximate cause of any injury to her. McKinley asserted before the trial court and now before us that causation is not an element of her cause of action. Dr. Stripling objected to the absence of an issue to the jury on causation. Under these circumstances, we conclude that McKinley waived her claim for negligent failure to disclose by refusing to request a jury finding on causation, a necessary element of that claim, in the face of Dr. Stripling's objection. Consequently, we reverse the judgment on the verdict in favor of McKinley and render judgment in favor of Dr. Stripling.

I

McKinley broke her right wrist playing tennis. After closed reduction surgery to set her wrist, McKinley suffered a malunion; that is, her wrist bone healed in a faulty position. This deformity caused her wrist and hand to twist inward and made it difficult for her to use her hand to write or type, to play tennis, to play the violin and piano, and even to eat. McKinley was referred to Dr. Stripling, a specialist in hand surgery, for evaluation and treatment of the malunion.

Dr. Stripling recommended an osteotomy to correct the deformity in McKinley's wrist. McKinley naturally desired to regain as much of the normal function of her wrist as possible, and agreed to Dr. Stripling's recommendation. The osteotomy involved two separate surgical procedures. In the first, the wrist bone was rebroken and reset using a bone graft from McKinley's pelvis and a metal plate and screws to hold the reset bone in position until it healed. In the second, the metal plate and screws were removed. The osteotomy was successful, and McKinley was completely satisfied with it.

In between the two surgical procedures, however, McKinley experienced a new complication: limited function of her thumb. Dr. Stripling felt that McKinley's restricted thumb movement was most likely due to some sticking in the motion of the thumb extensor tendon, and prescribed exercises and medication for McKinley in hopes of restoring full thumb movement. When McKinley's condition did not improve, Dr. Stripling recommended that exploratory surgery be performed at the same time as the second part of the osteotomy, to determine why the thumb extensor tendon did not work, and if possible, to fix it. Increasingly frustrated with her problems, McKinley again agreed to Dr. Stripling's recommendation, requesting him to do whatever he could to correct the problem with her thumb. McKinley signed a written consent to the surgery, stating:

---

1. Geneva McKinley's husband, Albert McKinley, was also named as a plaintiff in this suit. However, he asserted no separate cause of action or claim for relief. He asserts no independent error in this appeal.

if any unforeseen condition arises in the course of the operation calling on his judgment for procedures in addition to or different from those now contemplated, I further request and authorize him to do whatever he deems advisable.

In fact, an unforeseen condition did arise. During the surgery, Dr. Stripling discovered for the first time that McKinley's long thumb extensor tendon was not simply stuck, but ruptured and no longer functional. The proper procedure under the circumstances was to transfer the proper index extensor tendon of the index finger to the long thumb extensor, leaving the common extensor tendon to enable movement of the index finger. Although proper, this procedure does result in a partial loss of independent movement of the index finger, and as with any surgery, there is some risk that it will not be successful. Without the surgery McKinley would never recover full use of her thumb. Dr. Stripling had not discussed the risks of tendon transfer with McKinley prior to surgery because he had not anticipated that it would be required, and he could not discuss the risks of the procedure with her during surgery because she was sedated. Faced with the choice of either going ahead and performing the proper tendon transfer or closing the incision and deferring further surgery until he could apprise McKinley of the risks, knowing how much McKinley wanted her problem to be corrected as quickly as possible, Dr. Stripling went ahead with the tendon transfer.

Following this surgery McKinley experienced a further complication: she was unable to extend her index finger as completely as she should, even with the tendon transfer. Dr. Stripling again recommended exploratory surgery to determine the cause of the problem. This time he anticipated that the common extensor tendon to the index finger might be ruptured and that it might be necessary to tie that tendon to the common extensor tendon of the middle finger. This procedure usually does not impair the movement of the middle finger. Dr. Stripling discussed this surgery with McKinley, and she asked him to perform it. During this surgery Dr. Stripling found

that the common extensor tendon to McKinley's index finger was indeed ruptured, and he performed the procedure he had discussed with McKinley.

As a result of Dr. Stripling's surgeries, McKinley regained the use of her wrist but experienced some tendon scarring and limitation in her ability to extend her index and middle fingers. The jury found that this scarring and restricted finger movement were inherent risks of tendon transfer surgery which could influence a reasonable person in deciding whether to consent to the surgery. The jury then found that McKinley had been damaged in an amount just over $12,000.

McKinley refused to request the court to inquire of the jury whether Dr. Stripling's failure to inform McKinley of the risks of tendon transfer surgery proximately caused her damages. Over Dr. Stripling's objection, the district court did not submit the issue of proximate cause to the jury.

II

The only cause of action a patient has against a physician for failure to disclose the risks of surgery is an action for negligence. Article 4590i, section 6.02, Tex.Rev. Civ.Code Ann. (Vernon Supp.1987), states:

In a suit against a physician or health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.

An action for negligence has four elements: (1) breach of (2) a legal duty (3) proximately causing (4) injury. *See, e.g., Price v. Hurt,* 711 S.W.2d 84, 86. Section 6.02 establishes the legal duty underlying a negligent disclosure action: a physician must disclose to his patients the information that

could influence a reasonable person in deciding whether to consent to medical care. The three remaining elements—breach, cause and injury—must be proved by the patient.

McKinley contends that proximate cause is not an element of a negligent disclosure claim under section 6.02. In McKinley's view, a physician who fails to disclose risks which could have influenced a reasonable person is strictly liable for any injury suffered by that person, regardless of whether the injury was caused by the inadequate disclosure. Thus, a patient would be entitled to recover damages from a physician for any injury suffered as a result of medical treatment any time the physician failed to disclose the risks of that treatment, even if the patient freely admitted that he would have consented to the treatment had the risks been disclosed. Such a strict liability theory is directly contrary to the statutory prescription that "the only theory on which recovery may be obtained is that of negligence".

McKinley bases her contention principally upon two medical malpractice cases, both involving actions for failure to disclose risks of care, *Peterson v. Shields,* 652 S.W.2d 929 (Tex.1983), and *Barclay v. Campbell,* 704 S.W.2d 8 (Tex.1986). The trial courts in both cases directed verdicts for the defendant doctors. In *Peterson,* the trial court granted a directed verdict because the plaintiff's only expert witness testified that he was not familiar with the standard of care for physicians in the defendant's community. The supreme court reversed, holding that the standard of care for physicians was irrelevant to plaintiff's claim. The court observed that section 6.02 has changed the basis for liability for negligent disclosure from the common law basis of what information a prudent physician should disclose to what information a reasonable patient would be influenced by.

Thus, the court held that the absence of evidence regarding standard of care was inconsequential. Evidence that a reasonable patient could have been influenced in deciding whether to consent to the surgery performed on the plaintiff by information which the defendant did not disclose to her precluded a directed verdict. *Barclay* restates *Peterson* and adds that the statutory standard is objective rather than subjective. In other words, the issue is whether undisclosed risks could have influenced a reasonable patient, not necessarily the actual patient involved. Neither *Peterson* nor *Barclay* holds that proximate cause is not an element of a negligent disclosure action. Neither case addresses this issue. Both cases deal exclusively with the nature of the statutory duty and the evidence required to show a breach.

Before section 6.02 was enacted it was clear that causation was an element of an action for negligent disclosure. *See Wilson v. Scott,* 412 S.W.2d 299, 302 (Tex. 1967); *Hartfiel v. Owen,* 618 S.W.2d 902, 904–905 (Tex.Civ.App.—El Paso 1981, writ ref'd n.r.e.); *Forney v. Memorial Hospital,* 543 S.W.2d 705, 708 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.). Section 6.02 changes only the legal duty underlying the action from the common law physician-oriented duty to a new patient-oriented duty. The duty of disclosure is no longer measured by what a prudent physician would disclose, but by what a reasonable patient would want to know. Section 6.02 does not purport to abolish the element of causation.

■ Although we have been cited to no case directly addressing the issue before us,[2] we believe the statute is quite clear. We hold that three elements must be proved to establish a cause of action under section 6.02:

2. In *Duff v. Yelin,* 721 S.W.2d 365, 371–372 (Tex.App.—Houston [1st Dist.] 1986, writ granted), the jury was apparently asked whether a disclosure of the risks of surgery would have caused a reasonable person to refuse surgery. The appellate court did not approve this issue but limited its review to whether there was factually insufficient evidence to support the jury's negative answer. Thus, *Duff* is not apposite to the issue before us. We note, however, that the correct inquiry to the jury regarding proximate cause as distinguished from negligence is whether disclosure would have caused the plaintiff, not an unspecified reasonable person, to refuse surgery.

*First,* that the defendant failed to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent to medical care or a surgical procedure;

*Second,* that such failure was a proximate cause of injury to the plaintiff; and

*Third,* that the plaintiff should be compensated for such injury by some amount of money.

The trial court's failure to submit an issue on proximate cause to the jury was error. Accordingly, we sustain Dr. Stripling's two points of error.

### III

McKinley did not request the trial court to submit a jury issue on proximate cause. When Dr. Stripling properly objected to the absence of such issue, McKinley advised the trial court that she believed the issues submitted fully complied with the requirements of *Barclay,* and that she would not agree to submit an issue regarding proximate cause. By thus refusing to request a jury finding on an essential element of her cause of action, over Stripling's objection, McKinley has waived her right to recover on this cause of action.

Accordingly, we reverse the judgment of the district court and render judgment that McKinley take nothing against Dr. Stripling.