**James H. BYRD, Appellants,**

v.

**The ESTATE OF H.G. NELMS, Appellee.**

**No. 10–01–00241–CV.**

Court of Appeals of Texas, Waco.

Nov. 17, 2004.

Laura B. Herring, Bracewell & Patterson, Debra Jo Catlett, Houston, John E.S. Kramar, Richmond, for appellants.

Russell S. Briggs, Kenneth T. Fibich, Fibich, Hampton, Leebron & Garth, L.L.P., Houston, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

James H. Byrd, along with others in a joint venture, signed an agreement guaranteeing a debt incurred by the joint venture. Years after Byrd assigned away his interest in the joint venture, he was sued by The Estate of H.G. Nelms,[1] one of the

---

1. "The Estate of H.G. Nelms" is an entity acting as a Texas general partnership com-

current venture partners and also a co-guarantor, which, after purchasing the underlying debt, sought payment of the debt from its fellow co-guarantors. A jury found that the Nelms Partnership paid the debt in its capacity as a co-guarantor and not as a partner in the joint venture. The trial court held Byrd jointly and severally liable for the debt. Byrd appeals from this judgment. We find that there is sufficient evidence that the Nelms Partnership paid the debt in its capacity as a guarantor. We also hold that a co-guarantor can purchase a note and sue its fellow co-guarantors as an assignee. However, despite "joint and several" language in the guaranty agreement at issue, the Nelms Partnership is limited in its recovery to the proportionate share of the co-guarantors.

## THE ISSUES ON APPEAL

Byrd contends in nine[2] issues that: (1) there is no evidence or factually insufficient evidence to support the jury's finding that the Nelms Partnership paid the note in its capacity as a guarantor; (2–5) the trial court erred by refusing to submit proposed jury questions and instructions; (7) the trial court erred by finding that Byrd was jointly and severally liable; (8) there is no evidence or factually insufficient evidence to support the judge's finding that the Nelms Partnership had standing to sue or that it sustained any damages in the capacity in which it brought suit; and (9) there is no evidence or factually insufficient evidence to support the judge's finding that the note matured by its own terms on March 1, 1995, and that the Nelms Partnership established notice of default to the co-guarantors. The Nelms

Partnership contends in a single cross-point that the trial court erred in finding that it waived the right to recover prejudgment interest. We affirm in part, reverse and remand in part.

## BACKGROUND

In 1981, Byrd, the Nelms Partnership, and others formed a joint venture for the purpose of owning, maintaining, and leasing a building in Houston. The interest of each partner was as follows: James H. Byrd, 12.5%; John O'Leary, 25%; W.D. Culwell, 25%; William R. Dean, 25%; the Nelms Partnership, 6.25%; and Elouise A. Nazro, 6.25%. In order to pay the $3,000,000 purchase price, the venture executed a promissory note (first note) payable to Holland Mortgage and Investment Company in the amount of $2,250,000. The partners contributed to the $750,000 down payment in proportion to each one's interest in the venture. The note was secured by a deed of trust and by unconditional guaranty agreements executed by all the partners. Over time the note went though a series of re-financing arrangements ultimately resulting in Texas Commerce Bank obtaining ownership.

In 1986, Dean and O'Leary assigned all their interest in the venture to Byrd, Culwell, Nazro, and the Nelms Partnership. They did not revoke their guaranty agreements. After the assignment, Dean and O'Leary had no further dealings with those remaining in the venture. Shortly thereafter, Byrd assigned his interest in the venture to the Nelms Partnership, Nazro, and Culwell without revoking his guaranty agreement. He did indicate that he thought that the Nelms Partnership, through Frank Nelms, orally agreed to

prised of four testamentary trusts. To avoid confusion, "The Estate of H.G. Nelms" will hereinafter be called the "Nelms Partnership."

**2.** Byrd's sixth issue concerns the party the Estate of W.D. Culwell. Because that party is no longer a part of this appeal, we will not address Byrd's sixth issue.

assume his obligations under the note if he paid the taxes for that year. Thereafter, Byrd had no further dealings with those remaining in the venture. Soon after, Culwell also conveyed his interest in the venture equally to the Nelms Partnership and Nazro, but did not revoke his guaranty. As a result of that conveyance, the Nelms Partnership and Nazro each became 50% owners in the venture.

In November 1989, the property was sold to Buffalo Speedway Investments, Inc., a corporation formed by the venture. On March 10, 1992, Buffalo Speedway Investments sold the property and the building to Lamar Council of Co-owners for $1,100,000. The day before the sale, Texas Commerce Bank released its lien on the property. The net proceeds of that sale were applied to the note at Texas Commerce Bank, leaving a balance of $1,052,758 on the note. On July 21, 1992, the Nelms Partnership and Nazro entered into a reimbursement agreement in which they agreed that they were each obligated to the other as partners in the joint venture for one half of the amount owed on the note. On that same day, Nazro paid for his half due on the first note, and the Nelms Partnership executed an installment loan note (second note) payable to Texas Commerce Bank in the amount of $526,379.09 towards his half of the indebtedness on the first note. Subsequently, Texas Commerce Bank assigned its interest in the first note and guaranty agreements to the Nelms Partnership and Nazro. The assignment made no mention of the joint venture. The Nelms Partnership paid the balance due on the second note in October 1992.

On November 11, 1993, the Nelms Partnership and Nazro filed suit against the co-guarantors, including Byrd, seeking compensation for breach of the guaranty agreements as assignees of the note and in the alternative contribution as co-guarantors. The plaintiffs did not pursue their claim against O'Leary, because he declared bankruptcy. Nazro was subsequently dismissed from the case for lack of jurisdiction. Judgment was entered against Byrd, Dean, and the Estate of W.D. Culwell in the amount of $459,428.79 plus attorney's fees. After reaching a settlement agreement, the Nelms Partnership partially dismissed its appeal as to Dean and the Estate of W.D. Culwell. Byrd and the Nelms Partnership are the only parties in interest in this appeal.

## SUFFICIENCY OF EVIDENCE— CAPACITY TO SUE

In Byrd's eighth issue, he urges that there is no evidence, or insufficient evidence, to support the trial court's finding that the Nelms Partnership had standing to sue or sustained any damages in the capacity in which it brought suit. Before trial, Byrd filed a verified plea in abatement, in accordance with Rule 93(1) of the Texas Rules of Civil Procedure, contending that there was insufficient information to determine the capacity in which the Nelms Partnership brought this suit. The plea indicated that the Nelms Partnership could not maintain such a suit if it had failed to file an assumed name certificate in the county in which it is conducting business under that assumed name. It also stated that the Nelms Partnership did not specify the type of entity by which it operated. Byrd contends that it cannot tell whether "the Estate of H.G. Nelms" acting as the estate of the deceased H.G. Nelms is suing based on the note, or whether "the Estate of H.G. Nelms" acting as the Nelms Partnership is suing on the note.

As a result, the Nelms Partnership filed a verified response, showing that before trial in 1992 it had filed an assumed name

certificate in Harris County indicating that it was a general partnership. The trial court subsequently denied Byrd's plea in abatement.

■ Whether a party has capacity to sue is a question of law. *Anderson v. New Property Owners' Ass'n of Newport, Inc.,* 122 S.W.3d 378, 384 (Tex.App.-Texarkana 2003, pet. denied) (citing *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928–29 (Tex.1998)). A trial court's conclusions on questions of law cannot be attacked on factual insufficiency grounds. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002); *Hardy v. State,* 50 S.W.3d 689, 696 (Tex.App.-Waco 2001), *aff'd,* 102 S.W.3d 123 (Tex.2003). Rather, they are reviewed *de novo* and are analyzed for their correctness. *BMC Software,* 83 S.W.3d at 794; *Hardy,* 50 S.W.3d at 696. Even if the conclusions of law are not correct, the error will not require reversal if the trial court rendered the proper judgment. *BMC Software,* 83 S.W.3d at 794; *Hardy,* 50 S.W.3d at 696.

The Texas Business and Commerce Code requires every business operating under an assumed name to file an assumed name certificate in the county where the entity is doing business. Tex. Bus. & Com. Code Ann. § 36.10(a) (Vernon 2002). If an assumed name certificate is not filed, the entity loses the privilege of bringing suit in any court under the state of Texas under that name. Tex. Bus. & Com.Code Ann. § 36.25 (Vernon 2002).

In response to Byrd's plea in abatement, the Nelms Partnership presented evidence that it had indeed filed an assumed name certificate in Harris County. The certificate states that the entity doing business in Harris County is a general partnership called "The Estate of H.G. Nelms," the very name of the entity listed as the plaintiff in this case. *See* Tex.R. Civ. P. 28. The certificate was filed June 12, 1992, over one month before the Nelms Partnership signed a promissory note with Texas Commerce Bank with which to pay off the original note. Furthermore, the Nelms Partnership also produced a 1996 partnership agreement between four testamentary trusts. The partnership was called "The Estate of H.G. Nelms."

We find that the trial court's conclusion that the Nelms Partnership had the legal capacity to sue Byrd was correct. *BMC Software,* 83 S.W.3d at 794.

Throughout his various issues, Byrd consistently argues that the Nelms Partnership lacks the ability to recover in the capacity in which it sued. This argument is restated in various ways, such as: the Nelms Partnership lacks the ability to recover in the capacity in which it sued because it was not a partnership at the time the note was purchased; the Nelms Partnership cannot prove it is the holder of the note because it did not acquire the note in the capacity that it is now suing under, *i.e.,* it was not a partnership at the time the note was purchased. Byrd brought some evidence to prove his theory of capacity during the trial, apparently seeking to put the issue before the jury; however none of his evidence was presented to the trial court in his plea in abatement, the proper pleading for questions of capacity to sue. *El T. Mexican Restaurants, Inc. v. Bacon,* 921 S.W.2d 247, 250 (Tex.App.-Houston [1st Dist.] 1995, writ denied); *Rimco Enterprises, Inc. v. Texas Elec. Serv. Co.,* 599 S.W.2d 362, 365 (Tex. Civ.App.-Fort Worth 1980, writ ref'd n.r.e.). In his plea in abatement and in his argument at the hearing, Byrd argued only that they could not discern what entity was bringing an action against him, and that the pleadings should be amended. Byrd did not argue to the trial court that the partnership was not in existence when the note was purchased and seeks to do so

only on appeal. Therefore we will not consider it in reviewing the issue on capacity to bring suit. *Loera v. Interstate Inv. Corp.*, 93 S.W.3d 224, 228 (Tex.App.-Houston [14th Dist.] 2002, pet. denied).

However, in passing, we note the following facts. In 1981, at the inception of the joint venture, the joint venture agreements and original guaranty agreements were all signed "The Estate of H.G. Nelms by" with the trustees · of the trusts signing underneath. This method of signing continued until 1987. At that time, the note was assigned to Texas Commerce Bank. The assignment documents and renewed guaranties were signed "The Estate of H.G. Nelms, a Texas General Partnership, a Joint Venturer" and underneath this notation, each trust was named and designated as a general partner beneath which were the signatures of the trustees for each trust. The Nelms Partnership continued this method of signing for almost every transaction thereafter. The signed partnership agreement is dated 1996, but there need not be a written partnership agreement for a partnership to be legally recognized. TEX.REV.CIV. STAT. ANN. art. 6132b, § 1.01(12) (Vernon 2002). The assumed name certificate stating that "The Estate of H.G. Nelms" was a general partnership consisting of four trusts was on file in Harris county more than a month before the July 21, 1992, transaction between the Nelms Partnership and Texas Commerce Bank.

We overrule Byrd's eighth issue.

## SUFFICIENCY OF EVIDENCE— PAYMENT AS GUARANTOR

The jury found that the Nelms Partnership paid the note in its capacity as a guarantor. Byrd contends in his first issue that there is no evidence or factually insufficient evidence to support the jury's finding. We find that there is sufficient evidence that the Nelms Partnership paid the note as a guarantor.

## Standard of Review

Byrd, as the defendant, did not have the burden of proof at trial. *See Escalante v. Luckie*, 77 S.W.3d 410, 416 (Tex.App.-Eastland 2002, pet. denied). To prevail on a no-evidence complaint, an appellant who did not have the burden of proof at trial must show that there is no evidence to support the contested finding. *Beard v. Beard*, 49 S.W.3d 40, 55 (Tex.App.-Waco 2001, pet. denied). The appellate court must consider only the evidence and inferences that support the adverse finding and ignore all evidence and inferences to the contrary. *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex.2002). A "no evidence" claim will be sustained if: (a) there is a complete absence of evidence of a vital fact; (b) the rules of law or evidence prevent the court from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is not more than a scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L.REV. 361, 362–63 (1960)). When the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusion," then there is more than a scintilla of evidence. *Beard*, 49 S.W.3d at 55 (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995)).

When an appellant who did not have the burden of proof at trial complains of factually insufficient evidence, the appellate court must examine the entire record. The court will reverse only if the trial court's finding is "so contrary to the overwhelming weight of the evidence as to be

clearly wrong and unjust." *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Beard,* 49 S.W.3d at 55. If the proponent's proof, while adequate, if taken alone, is so overwhelmed by the opponent's contrary proof, or if the finding is based on weak evidence, reversal can occur. *Checker Bag Co. v. Washington,* 27 S.W.3d 625, 633 (Tex.App.-Waco, pet.denied) (citing William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEX. L.REV. 515, 519 n. 11 (1991)).

■ In resolving this issue, we must first look to what the Nelms Partnership was required to prove at trial. Byrd argues that the Nelms Partnership must prove (1) Byrd executed the guaranty; (2) the underlying note is in default; (3) the Nelms Partnership in its capacity as a guarantor is the present holder of the note and the guaranty agreements; and (4) there is a balance due and owing on the note. *Sunbelt Savings, FSB, Dallas, Texas v. Birch,* 796 F.Supp. 991, 995 (S.D.Tex. 1992). However, Byrd relies on federal precedent that is not binding upon this court. In order that we might be consistent with our sister courts, we find that in order to recover on a breach of guaranty agreement, the plaintiff must prove: (1) the existence and ownership of the guaranty agreement; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor. *Escalante,* 77 S.W.3d at 416; *Marshall v. Ford Motor Company,* 878 S.W.2d 629, 631 (Tex.App.-Dallas 1994, no writ). Byrd does not argue about the terms of the underlying contract or his refusal to perform his promise. His arguments regarding whether there is a balance due under the note and whether the note is in default will be discussed in our review of his ninth issue. He argues only that the evidence

establishes that the Nelms Partnership paid the debt as a partner in the joint venture, and not as a guarantor. Therefore we will conduct our sufficiency review under (1).

### Capacity in which the Nelms Partnership Obtained the Guaranty Agreement

■ A guaranty creates a secondary obligation whereby the guarantor promises to answer for the debt of another, and a creditor may call upon the guarantor to perform once the primary obligor has failed to perform. *Garner v. Corpus Christi Nat. Bank,* 944 S.W.2d 469, 475 (Tex.App.-Corpus Christi 1997, writ denied) (citing *Republic Nat'l Bank v. Northwest Nat'l Bank,* 578 S.W.2d 109, 114 (Tex. 1978)). In this instance, the primary obligor was the joint venture. The co-guarantors can be called to answer for the debt only if the joint venture cannot fulfill its duties and pay the debt. *Id.*

■ The question asked of the jury is the method in which the Nelms Partnership acquired the note: by payment or by purchase. The Nelms Partnership is both a partner in the joint venture and a co-guarantor to the debt executed by the joint venture. This makes the Nelms Partnership liable on the note in two ways: (1) as a partner in the joint venture it is the principal debtor on the note; and (2) as a co-guarantor, it is secondarily liable on the note. Byrd argues that the Nelms Partnership did not purchase the note as a guarantor, but paid the note as a partner in the joint venture, thereby extinguishing Byrd's liability for the debt. The Nelms Partnership asserts that the money given to Texas Commerce Bank was not to pay off the debt, but to buy the debt and underlying agreements as a co-guarantor. An overview of the testimony and evidence

at trial demonstrates conflicting evidence on this issue.

Jack Lyons, the trustee of each of the four trusts comprising the Nelms Partnership, testified that the Nelms Partnership bought the debt in the capacity of a guarantor. While acknowledging the existence of a reimbursement agreement between the Nelms Partnership and Nazro as partners in the joint venture, he insisted that they paid it because they were obligated as guarantors to pay it. He indicated that because there was a balance on the debt after the sale of the property, "we had to make up the deficit." He further testified that the October 1992 payment on the second note was made by check on the Nelms Partnership's account. He said that Nazro also paid its proportionate share, and that no payment was made from a joint venture account. He related that there would not have been funds in a joint venture account from which to make such a payment. He admitted testifying previously that the Nelms Partnership and Nazro paid the indebtedness as partners in the joint venture.

In contrast to Lyons trial testimony, the 1992 federal income tax return of Buffalo Speedway Investments (the company formed by the joint venture) reflected that the Nelms Partnership and Nazro each made a capital contribution of $579,381 and $579,377, respectively. The return shows that the bulk of their respective capital contributions represented an assumption of debt from Buffalo Speedway Investments.

James Kelly, an attorney board certified in the areas of commercial and residential real estate, testified concerning the tax return, which he had seen for the first time a few minutes prior to his testimony. He acknowledged that the tax return reflected a loss for the joint venture of $947,143, largely occasioned by a long-term capital loss of $945,226. Yet, he explained that the loss was an assumption of debt in connection with the purchase of the notes that the Nelms Partnership had done in its individual capacity. He also stated that the capital contributions were necessary to zero out the capital accounts in the joint venture, and that the transaction was outside the venture. Kelly further testified that although the Nelms Partnership and Nazro, as the only partners in the joint venture, were primarily liable for all debts of the venture, nothing in the tax return indicated that the Nelms Partnership and Nazro acquired the note in any capacity other than their individual capacities.

Kelly also testified in the area of financial obligations relating to real estate. He concluded, based upon his examination of the documents in this case, that the Nelms Partnership and Nazro purchased the note in their individual capacities because the money came from them individually, not from the venture, and that the bank's assignment was made to them individually, not to the venture.

After reviewing the evidence, we find that the evidence is such that reasonable minds could come to different conclusions. That being so, it is not within our power to invade the province of the jury. *Beard*, 49 S.W.3d at 55. The evidence contrary to the verdict is not so against the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176. Therefore, we hold that there is sufficient evidence to support the jury's finding that the Nelms Partnership paid the debt in its capacity as a guarantor.

## SUFFICIENCY OF EVIDENCE— NOTE MATURITY AND NOTICE OF DEFAULT

■ Byrd contends in his ninth issue that there is insufficient evidence that the

note matured or that he received notice of default. In its judgment, the trial court stated, "It is further found by the Court, as a matter of law, that the Texas Commerce Bank note matured by its own terms on March 1, 1995, and Plaintiff has established notice of default provided to the Co–Guarantors by the filing of suit and by evidence produced at trial...." Byrd contends that there is no evidence to support the trial court's finding.

The trial court's finding that the note matured on its own terms was based on the trial court's interpretation of the note. The "Third Renewal and Extension of Note and Liens" provided that the note was to be fully and finally paid in its entirety by March 1, 1995. Apparently, Byrd's argument is twofold. He first asserts that because the Nelms Partnership paid the note as a partner in the joint venture in 1992, the note does not mature at all. And secondly, because Byrd was sued eighteen months before the maturity date, the note could not have matured on its own terms.

The question raised in the first argument was answered by the jury. The jury found that the Nelms Partnership purchased the loan in its capacity as a co-guarantor. In doing so, the Nelms Partnership becomes an assignee of the note, allowing the Nelms Partnership to stand in the shoes of the creditor and seek payment from the principal debtor (the venture) or the guarantors. *Fox v. Kroeger*, 119 Tex. 511, 35 S.W.2d 679, 681 (1931).

■ Regarding Byrd's second argument, normally, an assignee must wait until the note matures or there is a default on the note before pursuing its claims against the principal debtor or the guarantors. However, as long as the note is mature and due at the time of trial, there is no error. *See Arnold v. Willis*, 68 Tex. 417, 4 S.W. 485 (Tex.1887). The trial was

held in 2001, well after the note became due on its own terms. Furthermore, there was testimony at trial that after the building was sold in 1992, the note became due at that moment, and the joint venture had no funds with which to pay off the amount owed on the note. We find there was sufficient evidence for the court to conclude that the note matured before trial.

■ Byrd further argues that the trial court erred in finding that he received notice that the venture defaulted on the note, thereby triggering his liability. However, by the very terms of his guaranty agreement, Byrd is not entitled to notice of default. His guaranty agreement states that "[g]uarantors hereby expressly waive .... (c) notice of demand for payment, notice of default or nonpayment, presentment, protest and notice of protest, as to the note...." "A guarantor is not entitled to have demand made for payment nor notice of default unless expressly provided for." *Roseborough v. Phillips*, 389 S.W.2d 593, 595 (Tex.Civ.App.-Dallas 1965, no writ); *see also Vaughn v. DAP Financial Services, Inc.*, 982 S.W.2d 1, 6–7 (Tex. App.-Houston [1st Dist.] 1997, no writ). The guaranty agreement expressly provides the opposite. We overrule Byrd's ninth issue.

### JUDICIAL ESTOPPEL

■ Byrd further asserts, in conjunction with his first issue, that the Nelms Partnership is judicially estopped from contending that it paid off the indebtedness in the capacity of a guarantor because such a position is inconsistent with the 1992 tax return of Buffalo Speedway Investments. He argues that the Nelms Partnership should not be allowed to pay the debt as a partner in the venture, taking the benefit of a valuable tax loss, and then claim that it paid as a guarantor and

gain the benefit of contribution from the co-guarantors.

Judicial estoppel prevents a party from asserting a position in a legal proceeding which is inconsistent with a position previously taken by the party. *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 & n. 1 (5th Cir.1999). We have recently held that in cases of judicial estoppel, we apply the law applicable to the prior proceeding. *Dallas Sales Co., Inc. v. Carlisle Silver Co., Inc.*, 134 S.W.3d 928, 931 (Tex.App.-Waco 2004, pet. denied). Because the tax return was made under oath to a federal agency, we will apply federal law.

Byrd cites *Ashman v. Commissioner of Internal Revenue* in support of his position. 231 F.3d 541, 543 (9th Cir.2000). However, *Ashman's* holding is based on the "quasi-estoppel" theory used by the Tax Court in actions against taxpayers and is not precedent for the argument that a tax return can be used to judicially estop a party from arguing an inconsistent position in a judicial proceeding that is not before the Tax Court. *See id.* On the contrary, while the majority of the federal courts have not addressed this issue, two circuits have decided that judicial estoppel would not apply to sworn statements in a tax return. *Atlantic Limousine, Inc. v. N.L.R.B.*, 243 F.3d 711, 715 n. 2 (3rd Cir. 2001); *Smith v. Travelers Ins. Co.*, 438 F.2d 373, 377 (6th Cir.1971). Therefore, we find that judicial estoppel is inapplicable in this case. We overrule Byrd's first issue.

## JURY QUESTION—WHETHER A PARTNERSHIP EXISTED

Byrd contends in his second issue that the trial court erred by failing to submit a question as to whether, on the date that the Nelms Partnership paid the bank for the assignment of the note, a partnership existed between the four trusts that comprised the Nelms Partnership.

We review a trial court's decision to submit or refuse a particular instruction under an abuse-of-discretion standard. *See Tex. Dep't of Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). Pursuant to the Texas Rules of Civil Procedure, a trial court is required to submit questions and instructions that are raised by the pleadings and evidence. Tex.R. Civ. P. § 278. The trial court has broad discretion in submitting jury questions and instructions. *See Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 791 (Tex.1995). When a trial judge refuses to submit a proper question or instruction, a reversal is not required unless the error probably caused the rendition of an improper judgment. *See* Tex.R.App. P. § 44.1; *Union P.R. Co. v. Williams*, 85 S.W.3d 162, 170 (Tex.2002).

The question of whether a partnership existed at the time the note was paid is relevant to the ownership of the note. If the Nelms Partnership did not exist at the time the note was paid, then the Nelms Partnership may not have ownership of the note upon which to sue. Ownership of a note is an issue of capacity and requires a verified denial in order to preserve error. *Pledger v. Schoellkopf*, 762 S.W.2d 145, 145–46 (Tex.1988) (per curiam); *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex.1996). Any question concerning the Nelms Partnership's capacity to sue was determined by the trial court as a matter of law in ruling on Byrd's plea in abatement. We have already held in Byrd's eighth issue that the trial court was correct in holding that the Estate had the requisite capacity to sue.

Issues of capacity to sue are questions of law. *Mayhew*, 964 S.W.2d at 928–

29. Issues found as a matter of law should not be submitted to the jury. *Star Enterprise v. Marze,* 61 S.W.3d 449, 459 (Tex. App.-San Antonio 2001, pet. denied) (citing *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 222–23 (Tex.1992)). Therefore, the trial court did not abuse its discretion in refusing to submit Byrd's question. We overrule Byrd's second issue.

## JURY QUESTION—BREACH OF GUARANTY AGREEMENT

▇▇ Byrd insists in his third issue that the trial court erred by failing to submit his requested jury questions and instructions on whether he breached his guaranty agreement. Whether a party has breached a contract is a question of law for the court, not a question of fact for the jury. *See Willis v. Donnelly,* 118 S.W.3d 10, 25–26 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *Chappell Hill Bank v. Lane Bank Equip. Co.,* 38 S.W.3d 237, 245 (Tex.App.-Texarkana 2001, pet. denied); *Lafarge Corp. v. Wolff,* 977 S.W.2d 181, 186 (Tex. App.-Austin 1998, pet. denied). "The judge determines what conduct is required of the parties and, insofar as a dispute exists concerning the failure of a party to perform the contract, the judge submits the disputed fact questions to the jury." *Lafarge,* 977 S.W.2d at 186.

Byrd acknowledged at trial that he was a guarantor, and the guaranty agreements were admitted into evidence without objection. Byrd argues that because there was conflicting evidence of the elements necessary to prove breach of contract, the trial court should have submitted his breach of contract question. Regarding the conflicting evidence, Byrd argues that he offered evidence that the note was not in default, that the Nelms Partnership was not the holder of the note, and that there was no balance due on the note.

Whether the Nelms Partnership is the holder of the note is an issue of capacity, was found by the trial court as a matter of law, and was addressed in our disposition of Byrd's eighth issue. Whether the note was in default was found by the court as a matter of law and was addressed in our disposition of Byrd's ninth issue. Issues found as a matter of law should not be submitted to the jury. *See Star Enterprise,* 61 S.W.3d at 459.

Additionally, whether the note was in default or whether there was a balance due are questions resolved by the jury. The only reason Byrd gives as to why there is no balance, or the note is not in default is because the Nelms Partnership paid the note as a partner in the joint venture. Therefore, any fact question as to Byrd's breach of the guaranty agreement is resolved by the jury's answer to the charge. *Lafarge,* 977 S.W.2d at 186. The trial court did not abuse its discretion in refusing to submit Byrd's question on whether he breached the guaranty agreement. We overrule Byrd's third issue.

## JURY QUESTION—AMOUNT OWED

Byrd contends in his fourth issue that the trial court erred by failing to submit an issue concerning the amount of damages owed by him. As we will discuss under our review of Byrd's seventh issue, under general surety law, Byrd is responsible for his contributory share of the unpaid debt as a matter of law. *Mandolfo v. Chudy,* 253 Neb. 927, 573 N.W.2d 135 (1998). Therefore, there was no factual issue to submit to the jury with respect to it. The trial court did not abuse its discretion in refusing to submit Byrd's question on damages. We overrule Byrd's fourth issue.

## JURY QUESTION—WAIVER

Byrd argues in his fifth issue that the trial court erred by failing to submit his

requested jury question and instruction regarding whether the breach of the guaranty agreement was excused by waiver.

Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *United States Fid. & Guar. Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 357 (Tex.1971); *Hatch v. Williams*, 110 S.W.3d 516, 523 (Tex.App.-Waco 2003, no pet.). Waiver is an affirmative defense that can be established by a party's express renunciation of a known right, or by silence or inaction for so long a period as to show an intention to yield the known right. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex.1996). Intent is the key element needed to establish waiver. *Hatch*, 110 S.W.3d at 523.

Byrd's first argument is that waiver was shown by the fact that the joint venture's claim of a long-term capital loss on its 1992 tax return is inconsistent with claiming a right based on payment of the note by the Nelms Partnership as a guarantor. Even if this were error, it did not probably cause the rendition of an improper judgment. The jury considered the tax return when resolving the issue of whether the Nelms Partnership paid the note as a co-guarantor. The jury found that the Nelms Partnership paid the note as a guarantor, and we have held that the evidence is sufficient to support that finding, despite the tax return. Consequently, any error in the trial court's failure to submit the waiver issue is harmless. *See* TEX.R.APP. P. § 44.1; *Union P.R. Co.*, 85 S.W.3d at 170.

Byrd also argues that the agreement between Frank Nelms and Byrd is additional evidence of waiver. He points to testimony that Frank Nelms had a 1986 oral agreement with Byrd that Nelms would take over Byrd's obligation on the venture in exchange for his assignment of his interest to the venture and payment of

$12,000 in property taxes. We first note that Byrd has not referred us to any evidence that Byrd ever accepted Nelms's offer or paid the $12,000 in property taxes that was a condition of the waiver. We also note that under the Statute of Frauds an agreement to assume the debt of another must be in writing. TEX. BUS. & COM. CODE § 26.01(a) and (b)(2) (Vernon 2002). Consequently, inasmuch as any agreement by Nelms to assume Byrd's obligations to the holder of the note was not in writing, it could not form the basis for a valid agreement to that effect. We overrule Byrd's fifth issue.

## JOINT AND SEVERAL LIABILITY

Byrd argues in his seventh issue that the trial court erred in making a finding that the co-guarantors are jointly and severally liable. The guaranty agreements provide that the guarantors' liability is joint and several. In its sixth amended petition, the Nelms Partnership sought to recover for breach of the guaranty agreements in its capacity as the holder of the note and guaranty agreements and, alternatively, for contribution in its capacity as a co-guarantor. In the portion of the petition relating to its suit for contribution, the Nelms Partnership alleged that it was entitled to contribution from "[d]efendants, their co-guarantors, of the [sic] their pro rata share of the indebtedness paid by plaintiffs under the agreements." With respect to its claim for breach of the guaranty agreement, the Nelms Partnership alleged that "[d]efendants are each severally liable to plaintiffs for such amounts pursuant to their guaranty agreements."

Byrd argues that despite the provision in his guaranty agreement that he is jointly and severally liable, the Nelms Partnership is barred from asserting so because it judicially admitted that it was seeking only each defendant's proportionate share.

The assertion in the pleading relied upon by Byrd is not a judicial admission, but an alternative pleading. *See Brooks v. Center for Healthcare Servs.*, 981 S.W.2d 279, 283 (Tex.App.-San Antonio 1998, no pet.) (citing *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex.1983)).

█ Though the pleadings of the Nelms Partnership are not judicial admissions, Byrd is correct in arguing that he is liable to the Nelms Partnership for only his proportionate share. Because a guaranty is a type of surety, we will look to the laws of suretyship for clarification. *See* TEX. BUS. & COM.CODE ANN. § 34.01 (Vernon 2002).

Issues of suretyship and guaranty were decided long ago in Texas legal history. *See generally Roberson v. Tonn*, 76 Tex. 535, 13 S.W. 385 (1890) (recognizing that a surety must contribute to fellow co-surety's payment of the underlying debt); *Hollis v. Winfree*, 216 S.W.2d 625, 628–29 (Tex.Civ.App.Beaumont 1948, writ ref'd) (holding surety has no right to compel fellow co-sureties to contribute more than their proportionate share). However, the issue of whether a guarantor, by purchasing the underlying debt, can recover the full amount due on the note from a co-guarantor based upon "joint and several" language in the guaranty agreement is a more recent conundrum.

In an unpublished opinion, the Fifth Court of Appeals acknowledged the issue of a guarantor recovering more than its proportionate share, but declined to address it. Dealing with a related question, the court found that a co-guarantor can purchase the underlying debt and then sue on the debt as an assignee.

> Tomaszewicz's main argument is that a guarantor should not be allowed to improve his position in relation to other co-guarantors by obtaining an assignment of the note and guaranty agreement. In other words, a guarantor should not be able to sue based on the loan documents for the entire amount of the debt or deficiency, thereby eliminating his liabilities as a guarantor and increasing the liabilities of the co-guarantors.... We agree with Tomaszewicz that a guarantor does not necessarily escape responsibility for his share of the obligation under a promissory note by purchasing the note and guaranty agreement from the creditor.... But this is not the issue before us. The issue is whether Wiman can assert a cause of action against Tomaszewicz in his capacity as holder of the note and transferee of the guaranty agreement. We conclude he can.

*Wiman v. Tomaszewicz*, 1997 WL 459084, **4–7, (Tex.App.-Dallas Aug. 13, 1997, pet. denied) (not designated for publication).

The Fifth Court cited *Fox v. Kroeger* in support of its finding that a guarantor can purchase the underlying note.

> From what we have said it follows that we now announce the rule in Texas to be that, where the surety pays the debt of the principal, he has his election to either pursue his legal remedies and bring an action on an assumpsit, or the obligation implied by law in his favor for reimbursement by the principal; or he can prosecute an action on the very debt itself, and in either event he stands in the shoes of the original creditor as to any securities and rights of priority.

*Fox v. Kroeger*, 119 Tex. 511, 35 S.W.2d 679, 681 (Tex.1931).

█ We agree with the Dallas court, and find that the Nelms Partnership can purchase the underlying note and guaranty agreements and assert a cause of action against the co-guarantors as an assignee. However, finding no precedent in Texas on the issue at hand, we look to other jurisdictions for guidance.

While other jurisdictions disagree on whether a guarantor can purchase the underlying note and sue his co-guarantors as an assignee, they agree that the guarantor is limited in his recovery to only the contributive share of the other co-guarantors.[3] They reason that contribution is an equitable remedy that implies a contract between guarantors ensuring that in the event one of the guarantors is called to pay the debt, the other guarantors would contribute their proportionate share, and no more. *See Curtis v. Cichon*, 462 So.2d 104, 105–06 (Fla. 2d DCA 1985). The assignment of an underlying note and guaranty agreement to a guarantor does not change the status of the guarantor in relation to his co-guarantors. *Mandolfo*, 253 Neb. at 931, 573 N.W.2d at 138. Therefore, as a matter of law, the relationship between guarantors restricts recovery to their contributive share. *Weitz v. Marram*, 34 Md.App. 115, 121–22, 366 A.2d 86, 89–90 (1976).

The holdings of these jurisdictions are based primarily on section 149 of the Restatement of Security. The applicable provisions of the first edition of the Restatement and the current edition are reproduced below.

> A cosurety who has paid more than his proportionate share is also subrogated to the creditor's rights against the cosureties, provided the principal's duty has been satisfied, see § 141. The cosurety's right of recovery is, however, limited to the amount to which he is entitled as contribution.

Restatement of Security § 149 cmt. e (1941).

> (1) Subject to subsection (2) and to any express or implied agreement between or among the cosureties, a cosurety's contributive share is the aggregate liability of the cosureties to the obligee divided by the number of cosureties.

Restatement (Third) of Suretyship and Guaranty § 57 (1996).

> General Principle—With respect to the obligee, each cosurety is liable to the full extent of its secondary obligation. When an obligee obtains recovery from one of the cosureties, however, the cost of that performance should not ultimately rest completely on that cosurety. Rather, the cosureties are treated as though they agreed among themselves to share the cost of their performance. Thus § 55(2) gives the performing cosurety recourse against the nonperforming cosureties in order to bring about a sharing of that cost. The share of that cost to be borne by each cosurety is that cosurety's contributive share. Under subsection (1), the contributive share of each cosurety is presumed to be the total liability of the cosureties to the obligee divided by the number of cosureties.

Restatement (Third) of Suretyship and Guaranty § 57 cmt a (1996); *See also* Restatement (Third) of Suretyship and Guaranty § 55.

The policy concerns for holding that a guarantor's recovery against his co-guarantors is limited only to their proportionate share are best expressed thus:

**3.** *Rodehorst v. Gartner*, 266 Neb. 842, 669 N.W.2d 679 (2003); *Backman v. Hibernia Holdings*, 1998 WL 427675 (S.D.N.Y. July 28, 1998) (unpublished); *Mandolfo v. Chudy*, 253 Neb. 927, 573 N.W.2d 135 (1998); *Albrecht v. Walter*, 1997 N.D. 238, 572 N.W.2d 809 (N.D. 1997); *Estate of Frantz v. Page*, 426 N.W.2d 894 (Minn.Ct.App.1988); *Curtis v. Cichon*, 462 So.2d 104 (Fla. 2d DCA 1985); *Koeniger v. Lentz*, 462 So.2d 228 (La.Ct.App.1984); *Collins v. Throckmorton*, Del.Supr., 425 A.2d 146 (1980); *Weitz v. Marram*, 34 Md.App. 115, 366 A.2d 86 (1976).

Common sense dictates this result. All ... sureties agree to be liable for full payment of the note if the principal debtor defaults and are further liable for contribution to the co-surety who actually pays the creditor. Thus, each surety's ultimate liability may be fixed at his virile share of the note. If one of several sureties, as here, could purchase the note (or otherwise contractually subrogate to the creditor's rights) and then collect the full amount of the note from a co-surety, the purchasing surety would thereby escape liability for his virile portion of the debt. If [Appellants] were able to succeed on their theory, then upon the debtor's default, every surety would race to the bank to purchase the note. The Civil Code does not contemplate that a surety's liability should be premised upon the fortuity of being the first to purchase the debtor's note.

*Boyter v. Shreveport Bank and Trust,* 65 B.R. 944, 948 (W.D.La.1986).

We agree with the reasoning of these jurisdictions, and hold that the Nelms Partnership's right to sue on the note and guaranty agreements as a purchaser/assignee is limited as a matter of law to the contributive share of its co-guarantors.

The trial court calculated the amount of damages against Byrd as $459,428.79, which represents the $525,061.47 payment made by the Nelms Partnership less the Nelms Partnership's proportionate share of 6.25 percent ($65,632.68).[4] However 6.25 percent is not the Nelms Partnership's proportionate share as a guarantor, but its original percentage of ownership in the joint venture. The Nelms Partnership did not bring this action against Byrd in its capacity as a partner in the joint venture or under any joint venture agreement, but as a co-guarantor and under the guar-

anty agreements. The jury found that the Nelms Partnership purchased the debt in its capacity as a guarantor. Absent an express agreement among the guarantors to the contrary, the contributive share of the Nelms Partnership is limited to the total amount of liability divided by the number of co-guarantors. Restatement (Third) of Suretyship and Guaranty § 57 (1996).

The Nelms Partnership paid $525,061.47 for the note. There are six guarantors; therefore, Byrd's contributive share would be one-sixth of the note. We reverse the damages portion of the judgment and remand this cause to the trial court to recalculate the damages as to Byrd's contributive share of $87,510.25. We sustain Byrd's seventh issue.

**PREJUDGMENT INTEREST**

The Nelms Partnership filed a notice of appeal and asserted in a single cross-point that the trial court erred by failing to award it prejudgment interest. We first consider Byrd's contention that we should not consider the cross-point because the Nelms Partnership did not present it in a timely filed appellant's brief, but included the cross-point in his appellee's brief. Byrd contends that the Nelms Partnership was required to do so because it seeks, by means of the cross-point, to alter the trial court's judgment.

A party seeking to alter the trial court's judgment must file a notice of appeal. Tex.R.App. P. 25.1(c). An appellant is a party taking an appeal to an appellate court. Tex.R.App. P. 3.1(a). As we interpret these rules, the Nelms Partnership is an "appellant" (or "cross-appellant") with regard to its cross-point.

4. We note that the trial court miscalculated the percentage. The Nelms Partnership's proportionate share of 6.25 percent of $525,061.47 should be $32,816.34.

The Texas Rules of Appellate Procedure do not clearly delineate when a cross-appellant must file its brief raising issues on a cross-appeal. In appeals from a judgment notwithstanding the verdict, Rule 38.2(b) suggests cross-issues can be raised as part of the appellee's brief. Tex.R.App. P. 38.2(b). In any event, Rule 38.8(a)(2) says our choices in this situation are to dismiss the cross-appeal for want of prosecution or decline to dismiss it and give further direction to the case as we consider proper. Tex.R.App. P. 38.8(a)(2).

Byrd in its appeal seeks to reverse the judgment in its entirety, whereas the Nelms Partnership seeks to affirm it except for the additional recovery of prejudgment interest. Had Byrd and the Nelms Partnership both presented themselves as appellants, as apparently contemplated by the rules, it would have created the possibility of confusion with respect to the reference of the parties in this opinion. Under the circumstances, it makes sense, even if not technically correct, for the Nelms Partnership to present its cross-point in its appellee's brief, as it has done. Under these circumstances, we will exercise our discretion and consider the merits of the issue as briefed by the parties.

■■■ Byrd does not dispute that the Nelms Partnership would ordinarily be entitled to prejudgment interest. He argues only that the Nelms Partnership's attorney's declaration in its opening statement that it was not suing for interest, constitutes a judicial admission, precluding recovery of interest.

The pertinent part of the statement by the Nelms Partnership's attorney is as follows:

"Think about through the years too. We're not even suing for operating costs, interest, and everything, all the debt that was lost throughout all the years just to try to keep this building afloat when all their partners left them and abandoned them. That's not even a part of this case. So pursuing its case in accordance with being the holder of the note and being entitled to reasonable attorney's fees, that's why you're asked that today. Bottom line is we paid more than our fair share. We owed some on it too. Yes, we're guarantors."

■■■ In order to be a judicial admission, the statement relied upon must be deliberate, clear, and unequivocal. *See Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 568 (Tex.2001); *Thomas v. Cornyn,* 71 S.W.3d 473, 487–88 (Tex.App.-Austin 2002, no pet.) (quoting *Gevinson v. Manhattan Constr. Co.,* 449 S.W.2d 458, 466 (Tex.1969)). A reasonable interpretation of the statement is that it is a reference to the interest that the Nelms Partnership paid on the building that it otherwise would not have paid had the other partners not abandoned the joint venture. That being the case, the statement, as related to the issue of prejudgment interest, was not deliberate, clear, and unequivocal. Consequently, it did not constitute a judicial admission barring the Nelms Partnership from recovering prejudgment interest. *See Wolf,* 44 S.W.3d at 568. Therefore, we find the court erred in failing to award the Nelms Partnership prejudgment interest. We sustain the Nelms Partnership's cross-point.

### CONCLUSION

Though we approve of the disposition as to Byrd's liability, we reverse the judgment and remand this cause to the trial court with instructions to re-calculate damages as to Byrd's contributive share of $87,510.25, plus pre-judgment interest and attorney's fees. Tex.R.App. P. 44.1(b).

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

There are three major aspects of the Court's opinion with which I disagree.

These are (1) the resolution of the capacity/liability issue, (2) the charge issue on damages, and (3) the damage computation. The charge issue is dispositive of the appeal, but I must address the other two issues, at least briefly.

There is a question presented in this appeal that appears to be a question of first impression in Texas. To reach this question, we must first agree upon the answer to another question: what is the liability of co-sureties[1] when one, of several, co-surety "purchases" the underlying debt that all have guaranteed? The answer is not all that remarkable. First, we look to an agreement that defines the relationship between the co-sureties. If, as in this case, the only express agreement signed by each surety was with the lender, then we turn to the common law to determine the relationship between the various sureties. The holding is unremarkable because, absent an express agreement to the contrary, each surety is held liable for their "contributive share." *See Restatement (Third) on Suretyship and Guaranty* §§ 53 & 55 (1996). I will come back to the Court's holding of what constitutes "contributive share;" but with this part of the opinion, I find no particular fault, other than it may not be necessary to a disposition of the appeal.

It may be unnecessary because the relationship of the co-sureties in this case involved what I would characterize as a dispositive twist. You see, the most significant issue in this aspect of this case is a question of first impression regarding the merger of legal rights and obligations—the right to receive payment and the obligation to pay. In particular, what is the proper result when the entity that owes a debt is a joint venture and a general member of the joint venture, who is also a co-surety guaranteeing payment of the note, subsequently acquires ownership of the note? The Court holds that if one co-surety acquires the note, that co-surety can collect from the other co-sureties their contributive share of the note. The holding of the Court works fine if the co-surety that acquires the note is not also a debtor with an obligation for payment of the debt. But the purpose of the secondary obligation is to stand *behind* the obligation of the principal obligor to perform the underlying obligation. *Restatement (Third) on Suretyship and Guaranty* § 34, Comment a (1996).

My common sense question is why should the Nelms Partnership, which was a general member of the joint venture with the primary obligation to pay the note, be allowed to recover anything from anyone because of the acquisition of a note for which it owed the entire amount? Why does acquisition of the note by the Nelms Partnership not extinguish the obligation, or at the very least limit the acquiring general partner's ability to recover from other general partners of the joint venture according to the terms of their joint venture agreement? Can an entity owe itself money, guarantee payment of the debt itself, default on the debt, and then collect any part of the debt from a co-surety? I have seen nothing to indicate that is, or should be the law, that is, until this Court's opinion.

But the first issue to discuss on our way to resolving this case has to be capacity. I do not disagree with the analysis of the Nelms Partnership's capacity to sue. But the Court has not fully appreciated the issue regarding the Nelms Partnership's capacity. As I understand Byrd's argument, it is that even if the Nelms Partnership has the legal capacity to sue, the

---

[1] The jury found the Nelms Partnership paid the note as a guarantor. The majority opinion uses "guarantor" and "surety" interchangeably. These days, there is not much distinction between the two terms. For the sake of consistency and ease in referencing the Restatement, I will use the terms "surety" and "co-surety."

Nelms Partnership has not proved its capacity to recover the damages for which it has sued. *Cf.* TEX.R. CIV. P. 93.1 and TEX.R. CIV. P. 93.2. This is an entirely different question regarding capacity than one of capacity to bring suit in a Texas court. And it is broader than simply having paid the note as a surety. It is about the factual and legal question of whether the Nelms Partnership has shown itself to be the owner of the note or entitled to a recovery because it paid the note.

Byrd has always argued that the Nelms Partnership was not entitled to sue in the capacity in which the note was paid; that is, the Nelms Partnership paid the debt when it was not in default. And the question submitted to the jury said *"paid."* Therefore, the Nelms Partnership could not collect from the other co-sureties. For example, a surety may be entitled to subrogation, meaning it steps in as the obligee or creditor, if it pays the entire obligation owed. *See Restatement (Third) Suretyship and Guaranty* § 27 (1996). However, performance by a surety in the absence of a default by the principal obligor will not entitle the surety to subrogation. *Id.* Comment c. If a surety cannot step in as the creditor when it pays prior to a default, then why should the Nelms Partnership be able to do so as a co-surety and then collect from the other co-sureties? It should not.

This brings us to the charge issue. It is the issue regarding the submission of a question regarding the Nelms Partnership's damages that should resolve this appeal. Byrd objected to the failure to submit a damages question. The Nelms Partnership had the burden to establish the extent of its damages. First, how could the Nelms Partnership be damaged by acquiring a note that it owed? Second, why would the extent of the tax savings the Nelms Partnership enjoyed not be an offset to its damages, if any? But most importantly, if the Court were correct in its analysis that Byrd is responsible for his

contributive share of the debt, the extent of that obligation is not limited to a simple mathematical computation of debt divided by the number of co-sureties. It is undisputed that at least one of the co-sureties is bankrupt and did not pay its contributive share. Why should Byrd not have to incur some of the debt of the bankrupt co-surety? The simple answer is that he should. To properly determine the amount of damages, the Nelms Partnership needed to establish which co-sureties were insolvent so that the remaining co-sureties' payment could be proportionally increased to cover the bankrupt co-surety's contributive share of the note. *See Restatement (Third) Suretyship and Guaranty* § 57(2) (1996). This question should have been addressed and answered by the Nelms Partnership upon the original trial. These issues were not addressed because a damages issue was not submitted, and Byrd objected to that failure.

At least one of the other disputed issues regarding the amount of a contributive share would be whether a smaller settlement was taken as to some co-sureties than their contributive share due to their insolvency. Does this mean their contributive share should be treated as fully paid? Would the same rule have applied to those settling co-sureties that paid less than their contributive share to resolve the dispute with the Nelms Partnership? As to those co-sureties that settled with the Nelms Partnership for less that their contributive share, if Byrd does have to pay the shortfall, can Byrd then pursue them for their unpaid portion of the note payments, that portion that Byrd ultimately must pay in addition to his contributive share? And in making all these computations of damages, the other co-sureties that suffered through this trial would have had their damages calculated, and we would now be able to determine exactly what portion of the judgment was released

by the post-judgment settlement with those co-sureties.

The Court has simply taken a short-cut to a result, knowing that damages were not properly established by the Nelms Partnership, but not holding the Nelms Partnership responsible for its own failure in this regard. By his objection to the charge, Byrd preserved the issue and is entitled to a reversal and rendition because no damages issue was submitted. *See Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523, 530 (Tex.1997); *Stripling v. McKinley,* 746 S.W.2d 502, 505 (Tex.App.-Dallas 1988), *aff'd,* 763 S.W.2d 407 (Tex.1989).

Of course, this also brings us back to the third aspect of the case with which I disagree which you will see also brings us back to where we began: A damages computation is immaterial if this case is resolved by the simple holding that when an entity that is primarily responsible on a note, like a general partner in a joint venture, acquires the note in any form of transaction, as a matter of law the duty to pay the note is merged with the right to receive payment on the note, and thus no surety can be called upon to pay the obligation. Any other rule seems a bit circular. Upon the payment as a co-surety of the note by Byrd to the Nelms Partnership, the Nelms Partnership will immediately become liable to Byrd for repayment of that amount because it has primary liability on the note as a member of the joint venture (the maker of the note). *See Restatement (Third) Suretyship and Guaranty* § 58 (1996). And the Nelms Partnership will obviously have assets with which to pay Byrd, the very money Byrd just paid to the Nelms Partnership, even if the Nelms Partnership had no other assets before the payment.

What the Court is actually doing is forcing Byrd to pay, not as a surety of a note,

but as a general partner of a joint venture who has been assessed for an additional capital contribution. We miss the mark. Further, due to the failure of the Nelms Partnership to obtain a damages finding necessary in support of its claim, a finding necessary for the trial court to render a proper judgment, the trial court erred when it calculated the Nelms Partnership's damages over Byrd's objections to the refusal to submit a damages issue. I would therefore reverse and render judgment that the Nelms Partnership take nothing from Byrd. Because the majority does not, I respectfully dissent.